**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SOFTVIEW LLC,            ) | |
|            ) | |
|         Plaintiff,       ) | |
|            ) | C.A. No.  10-389-LPS |
|     v.             ) | |
|            ) | **DEMAND FOR JURY TRIAL** |
| APPLE INC., and AT&T MOBILITY LLC   ) | |
|            ) | |
|         Defendants.     ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO
DISMISS AND STRIKE DEFENDANTS' INEQUITABLE CONDUCT DEFENSES**

OF COUNSEL:

Josh A. Krevitt
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Tel:  (212) 351-2490

Brian Ankenbrandt
GIBSON DUNN & CRUTCHER LLP
1801 California Street
Denver, CO  80202-2642
Tel:  (303) 298-5923

Dated:  February 7, 2011
999952 / 35692

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE  19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants Apple Inc. and
AT&T Mobility LLC*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................. 2

III.  ARGUMENT ................................................................................................. 6

      A.   Plaintiff's Allegations of Insufficiencies Are Factually and Legally
           Incorrect ............................................................................................... 6

           1.   Defendants Identified the Changes Applicants Made During
                Prosecution that Resulted in Inequitable Conduct ...................... 6

           2.   Defendants Are Not Required to Identify Claims or Claim
                Limitations in this Context. ........................................................ 7

           3.   Defendants Plead Sufficient Facts from which to Infer that
                Applicants Intended to Deceive the PTO. ................................... 9

      B.   Alternatively, Defendants Seek Leave to Amend Their Pleadings ...... 11

      C.   Plaintiff Did Not Meaningfully Meet and Confer Before Filing Its
           Motion ................................................................................................. 13

IV.   CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

Page

## Cases

*Anascape, Ltd. v. Nintendo of America, Inc.,*
    601 F. 3d 1333 (Fed. Cir. 2010) ................................................................................12

*Baldwin Graphic Systems, Inc. v. Siebert, Inc.,*
    512 F.3d 1338 (Fed. Cir. 2008) .................................................................................12

*Cargill, Inc. v Cambra Foods, Ltd.,*
    476 F.3d 1359 (Fed. Cir. 2007) .................................................................................10

*Exergen Corp. v. Wal-Mart Store, Inc.,*
    575 F.3d 1312 (Fed. Cir. 2009) ...............................................................................8, 9

*Golden Hour Data Sys., Inc. v. emsCharts, Inc.,*
    614 F.3d 1367 (Fed. Cir. 2010) ..................................................................................8

*Howmedica Osteonics Corp. v. Wright Med. Tech.,*
    C.A. No. 00-1167(GEB), 2010 U.S. Dist. LEXIS 32291 (D.N.J. Mar. 30, 2010) ............... 9-10

*In re Burlington Coat Factory Secs. Litig.,*
    114 F.3d 1410 (3d Cir. 1997) ....................................................................................13

*Leader Techs., Inc. v. Facebook, Inc.,*
    C.A. No. 08-862-LPS, 2010 U.S. Dist. LEXIS 63493 (D. Del. June 24, 2010) ..................9, 10

*Li Second Family Ltd. Partnership v. Toshiba Corp.,*
    231 F.3d 1373 (Fed. Cir. 2000) ..................................................................................8

*Long v. Wilson,*
    393 F.3d 390 (3d Cir. 2004) ......................................................................................12

*Nilssen v. Osram Sylvania, Inc.,*
    504 F.3d 1223 (Fed. Cir. 2007) ..................................................................................8

*Research Found. of State Univ. of N.Y. v. Mylan Pharms., L.P.,*
    C.A. No. 09-184-GMS-LPS, 2010 U.S. Dist. LEXIS 64565 (D. Del. June 28, 2010) .........9, 13

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,*
    537 F.3d 1357 (Fed. Cir. 2008) ..................................................................................8

*Therasense Inc. v.Becton, Dickinson and Co.,*
    Nos. 2008-1511, 2010 U.S. App. LEXIS 9549, (Fed. Cir. April 26, 2010) ..............................6

## Statutes & Rules

35 U.S.C. § 132 ...........................................................................................................3, 4, 8

37 C.F.R. § 201.07..........................................................................................................3, 6, 8

Fed. R. Civ. P. 15(a) .......................................................................................................12

# I. INTRODUCTION

Defendants assert that the SoftView patents are unenforceable because the inventors and their agents (collectively, "Applicants") committed inequitable conduct during the prosecution of both patents. Specifically, immediately following the introduction of Apple iPhone (one of the accused products in this case), the Applicants sought to broaden the scope of the patents in order to remove claim limitations that the Apple product clearly does not employ. The Applicants did this by improperly introducing "new matter" into the patents, while at the same time repeatedly and explicitly misrepresenting the scope and nature of the changes in order to deceive the PTO.

In its motion, Plaintiff does not dispute any of the factual allegations set forth in Defendants' pleading. Rather, Plaintiff alleges only that Defendants' allegations are insufficient because they do not: (1) identify the changes that constitute the new matter; (2) identify specific claims to which the inequitable conduct applies; and (3) plead facts sufficient to support a "finding" of intent to deceive the PTO. As explained below, each of Plaintiff's arguments is incorrect. Defendants clearly have alleged inequitable conduct with the requisite specificity and, thus, Plaintiff's motion should be denied.

In this case, Defendants' inequitable conduct allegations are not based on third-party prior art, a context in which it may be reasonable for a plaintiff to seek additional details about the materiality of the third-party reference. Rather, because Plaintiff's inequitable conduct is encapsulated in its own amendments and modifications to the disclosures, pointing to those amendments and modifications is sufficient. Defendants believe that their citations to SoftView's own submissions, consisting of the amendments, modifications and misrepresentations as to the nature of the changes made, adequately pleads Plaintiff's inequitable conduct.

Nevertheless, the alleged deficiencies Plaintiff has identified are easily remedied. In the event that the Court finds merit in any of Plaintiff's objections, Defendants respectfully request leave to amend their defenses as in the attached, proposed amended pleading. The amended pleading further incorporates and calls out the amendments, modifications and statements relied upon in the allegations.[1]

## II. STATEMENT OF FACTS

Both of the patents in suit, U.S. Patent Nos. 7,461,353 (D.I. 27, Ex. A, the "'353 patent") and 7,831,926 (D.I. 27, Ex. B, the "'926 patent") claim priority to a common parent application – U.S. application no. 09/878,097, which was filed on June 8, 2001 (the "'097 application") – and name the same, two inventors, Gary B. Rohrabaugh and Scott A. Sherman. *See* Defendant Apple Inc.'s Answer, Defenses, and Counterclaims to First Amended Complaint for Patent Infringement ("D.I. 29") at ¶¶ 35, 36, 51, 52.[2] All three patents share the same primary patent attorney, R. Alan Burnett. *See* D.I. 29 at ¶¶ 35, 52. Collectively, the named inventors and Mr. Burnett are referred to herein as "Applicants."

---

[1]  A few days before filing its motion, Plaintiff raised its objections, but offered only a cursory and incomplete explanation of its objections and demanded that Defendants withdraw their inequitable conduct claims *with prejudice*. Notwithstanding Plaintiff's failure to make a reasonable attempt to resolve the issues addressed in the motion before filing it – or the sufficiency of Defendants' allegations as originally pled – Defendants believe that the additional detail contained in the amended pleading addresses each of Plaintiff's objections and thus moots the motion. *See* Exhibit A (Defendants' [Proposed] First Amended Answer, Defenses, and Counterclaims to First Amended Complaint For Patent Infringement).

[2]  Defendants Apple and AT&T Mobility have identical inequitable conduct pleadings for both patents. For simplicity, Defendants reference only Apple's pleading. Although the attached proposed amended pleading is for Apple Inc., AT&T Mobility, LLC would file an amended Answer incorporating the same changes.

Defendants' answers contain detailed allegations in support of their claims that the Applicants committed inequitable conduct in procuring the '353 and '926 patents. D.I. 29 at ¶¶ 32-41, 49-65. More specifically, the Applicants made repeated misrepresentations to the PTO regarding their intention to broaden the scope of both asserted patents by removing certain, key limitations of the original invention from the disclosure of the asserted patents. D.I. 29 at ¶¶ 36-37, 56-57. The PTO refers to this as "introducing new matter," and it is expressly prohibited. *See* 35 U.S.C. § 132 ("No amendment shall introduce new matter into the disclosure of the invention"); 37 C.F.R. § 201.07 ("The disclosure presented in the continuation must be the same as that of the original application, *i.e.*, the continuation should not include anything which would constitute new matter if inserted in the original application").

The asserted patents and the parent '097 application generally relate to a particular way of re-sizing web page content. According to the patents, the claimed invention allows web pages to be scaled for viewing on mobile devices with smaller displays, and allows a user to quickly "zoom" in and out of parts of the web page or "pan" (move across) the web page.

Before 2007, the patent family (including the '097 application, filed in 2001, to which both asserted patents claim priority) had been clearly and explicitly limited to translating web content (*i.e.*, HTML-based web pages) into a "vector" format or representation, which allowed such scaling, zooming and panning. Indeed, the title of the '097 application (and of the asserted '353 application when it was filed) was "Resolution Independent Vector Display of Internet Content." ***Every single claim*** of the '097 application, and every single claim of the asserted '353 application when filed, was limited to the translation to vector format and vector representations of web content in order to perform the scaling, zooming and panning.

3

Years after Plaintiff filed for and began prosecuting these vector-limited patents, Apple introduced the iPhone in early 2007. Within months of that introduction, the Applicants sought to broaden their claimed invention to remove the vector limitations. But, the Applicants faced a problem: the disclosure of the parent application uniformly described and claimed only a vector-based invention, and provided no support for a broader invention not limited to the use of vectors. Thus, the Applicants sought to broaden the ***disclosure*** in order to support claims that no longer contained the vector limitations.

In connection with the '353 patent, the Applicants ***repeatedly*** amended the specification and claims, including even changing the Title, Abstract, and Summary of Invention to remove references to "vector" terms. *See* D.I. 29 at ¶¶ 36-38. For example, the Applicants changed the title from "Resolution Independent ***Vector*** Display of Internet Content" to "***Scalable*** Display of Internet Content on Mobile Devices." The Applicants made similar changes throughout the patent, attempting to scrub key parts of the specification of any reference to vectors.

Such amendments to the '353 patent introduced new matter and were strictly prohibited. No new matter may be introduced by amendment. *See* 35 U.S.C. § 132 ("No amendment shall introduce new matter into the disclosure of the invention"). Because such amendments are not allowed, the Applicants misrepresented the nature of the amendments, and repeatedly – and falsely – claimed that the amendments contained no new matter, and that all claims were supported by the original disclosure of the '097 application. D.I. 29 at ¶ 36.

These false statements were highly material to patentability and were made with the specific intent to deceive the Patent and Trademark Office (PTO). D.I. 29 at ¶ 40. Had the PTO known of the Applicants' intent to use the changes made by amendment to support broader claims than could be supported by the application as filed, the PTO would have been required to

reject the amendments. *See* D.I. at ¶ 40. Thus, it was critical to the allowance of the patent that

Applicants deceive the PTO regarding the true intended scope of the changes in the

amendments.[3]

    In connection with the '926 patent, the Applicants made similar changes to the disclosure

when they filed the application, while falsely identifying the application as an identical

"continuation" of the '097 application. D.I. 29 at ¶¶ 55, 57, 59, and 60. There again, the

Applicants sought to broaden the disclosure of the invention by changing the Title, Abstract,

Field of Invention and Brief Summary of Invention to remove the explicit references to "vector"

terms. Despite the introduction of new matter, and contrary to PTO rules regarding continuation

applications, the Applicants falsely indicated to the PTO that no new matter had been introduced

by identifying the '926 application as a "continuation" of the '097 application. D.I. at 29 ¶¶ 55,

57, 59, and 64.[4]

    These false statements were highly material to patentability and were made with the

specific intent to deceive the PTO as to the scope and priority of the claimed inventions. D.I. 29

at ¶¶ 62-65. For example, Defendants allege that, had the PTO known of the Applicants' intent

---

[3] As further detailed in Defendants' proposed, amended pleading, the Applicants'
modifications to the disclosure of both the '353 patent and the '926 patent demonstrate both
materiality and deceptive intent. For example, in the PTO's stated reasons for allowing the
claims in the original '097 application, the examiner expressly relied on the original specification
to equate the invention with a "vector" format that enabled scaling, zooming and panning. *See*
Ex. A at ¶¶ 37(b), 60(e). The Applicants then modified the disclosures of both patents to remove
references to "vector" terms, in an improper attempt to broaden the invention beyond a "vector"-
based implementation. *Id.* at ¶¶ 37(a)-(l), 60(a)-(f); see also id. at ¶¶ 38-45, 61-74.

[4] A continuation is a "second application for the same invention claimed in a prior non-
provisional application." MPEP at § 201.07. The disclosure presented in the continuation must
be the same as that of the original application; *i.e.*, the continuation should not include anything
which would constitute new matter if inserted in the original application. *Id.*

to use the changes to the application to support broader claims than would be supported by the disclosure of the parent application, the PTO would have determined that the effective filing date for any such claims was the later filing date of the '926 application, rather than the earlier '097 application. *See* D.I. 29 at ¶ 62. Thus, were it not for the Applicants' misrepresentations, the PTO would have considered *six years* of intervening and invalidating prior art.[5] Thus it was essential that the Applicants mislead the PTO to maintain the priority date from the '097 application.

In sum, Defendants' allegations detail a pattern of inequitable conduct in which Plaintiff sought to broaden the scope of the invention – modifying the disclosure and claims with terms that found no support in the '097 application – while repeatedly misleading the PTO that no new matter was added.

### III. ARGUMENT

**A.     Plaintiff's Allegations of Insufficiencies Are Factually and Legally Incorrect.**

As explained below, Plaintiff's arguments regarding each of the three purported deficiencies in Defendants' allegations of inequitable conduct are without merit.

**1.     Defendants Identified the Changes Applicants Made During Prosecution that Resulted in Inequitable Conduct.**

Plaintiff argues that Defendants fail to identify the specific alleged "changes, additions, deletions or substitutions that resulted in the purported inequitable conduct" and send Plaintiff on "scavenger hunt to locate the new matter that might support Defendants' inequitable conduct

---

[5] Therefore, Defendants' allegations meet not only the materiality standard of 37 C.F.R. § 1.56, but also the "but for" test currently under consideration by the Federal Circuit. *See Therasense Inc. v.Becton, Dickinson and Co.*, Nos. 2008-1511, -1512, -1513, -1514, -1595, 2010 U.S. App. LEXIS 9549, (Fed. Cir. April 26, 2010) (granting petition for rehearing *en banc* on questions regarding the standards for materiality and intent in inequitable conduct defenses).

pleadings." Plaintiff SoftView LLC's Brief In Support Of Its Motion To Dismiss And Strike

Defendant Apple Inc.'s and Defendant AT&T Mobility LLC's Inequitable Conduct Defenses

("Motion") at 4-5. This is false.

For the '353 patent, Defendants have clearly alleged the three specific amendments (*i.e.*,

March 31, 2007, June 6, 2007, and December 9, 2007), and the specific sections of those

amendments (*i.e.*, Title, Abstract, Brief Summary of the Invention, Detailed Description of the

Invention) that contain the Applicants' improper attempts to introduce new matter. *See* D.I. 29 at

¶ 37. For the '926 patent, Defendants identify the specific sections of the '926 application that

were changed to introduce new matter (*i.e.*, Title, Abstract, Field of Invention and Brief

Summary of the Invention). *See* D.I. 29 at ¶ 56. Plaintiff cannot credibly deny that it can

determine what parts of these revisions were intended to introduce broadening new matter. It is

clear from a simple reading of the specified sections of the identified filings that the changes

were made to remove from the disclosure explicit references to "vector" and replace them with

potentially broader terms. In sum, Defendants alleged Plaintiff's inequitable conduct with

sufficient particularity, and no "scavenger hunt" is required to identify the modifications,

amendments and statements upon which Defendants rely.

### 2.     Defendants Are Not Required to Identify Claims or Claim Limitations in this Context.

Plaintiff incorrectly argues that Defendants are required to identify the specific claims

and claim limitations impacted by the Applicants' inequitable conduct. Motion at 6. The

Federal Circuit has held that "information is material when a reasonable examiner would

consider it important in deciding whether to allow the application to issue as a patent."[6] *Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, 614 F.3d 1367, 1373-73 (Fed. Cir. 2010) (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1367 (Fed. Cir. 2008).

With respect to the '353 patent, the Applicants sought to introduce new matter by amendment during prosecution, which is strictly prohibited under 35 U.S.C. § 132, and thus would be "important to a reasonable examiner" regardless of the effect on any one claim.

With respect to the '926 patent, by filing as a continuation, Plaintiff made a false claim of priority to the parent application. False claims of priority are ***always*** highly material, as they mislead the PTO as to the relevant timeframe for prior art. *See Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1233 (Fed. Cir. 2007) ("A claim for priority is inherently material to patentability because a priority date may determine validity, whether an issue arises in prosecution or later in court challenges to validity."); *Li Second Family Ltd. Partnership v. Toshiba Corp.*, 231 F.3d 1373, 1380 (Fed. Cir. 2000) ("Because the effective filing date of each claim in a patent application determines which references are available as prior art for purposes of §§ 102 and 103, information regarding the effective filing date is of the utmost importance to an examiner. Consequently, an applicant's misrepresentation that he is entitled to the benefit of an earlier filing date is highly material.").

For these reasons, Defendants' pleadings sufficiently demonstrate the materiality of the Applicants' misrepresentations without identifying the specific claims or claim limitations.

---

[6] Plaintiff's reliance on *Exergen* is misplaced, because *Exergen* addressed a claim of inequitable conduct based on the withholding of material prior art, the materiality of which depends on the disclosure by the reference of a particular claim or claim limitation. 575 F.3d at 1325-26, 1329. That aspect of the Federal Circuit's *Exergen* decision does not apply to Defendants' inequitable conduct allegations, which do not rely on the withholding of a material reference.

**3.    Defendants Plead Sufficient Facts from which to Infer that Applicants Intended to Deceive the PTO.**

Plaintiff's arguments regarding the sufficiency of Defendants' allegation of intent are simply without merit. At the pleading stage, the Federal Circuit requires only "that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind."[7] *Exergen,* 575 F.3d at 1327; *accord Leader Techs., Inc. v. Facebook, Inc.,* C.A. No. 08-862-LPS, 2010 U.S. Dist. LEXIS 63493 at *12-13 (D. Del. June 24, 2010). Defendants alleged many facts from which a court may reasonably infer that the Applicants acted with the intent to deceive the PTO.

With regard to the '353 patent, Defendants plead that the Applicants sought to introduce new matter while telling the PTO the opposite, intended or believed that the modified disclosure would support claims of broader or different scope than the disclosure as filed, and knew that the PTO would reject the amendments if the PTO understood the Applicants' aim in making them. *See* D.I. 29 at ¶¶ 36-38, 40-41. All of these facts—***already pled by Defendants***—clearly support a reasonable inference that the Applicants acted with the intent to deceive the PTO. *See, e.g., Research Found. of State Univ. of N.Y. v. Mylan Pharms., L.P.,* C.A. No. 09-184-GMS-LPS, 2010 U.S. Dist. LEXIS 64565, *7 (D. Del. June 28, 2010) (finding that intent could be inferred from defendants' allegations that the applicants withheld material information from the PTO without any reasonable explanation for withholding it); *Howmedica Osteonics Corp. v. Wright Med. Tech.,* C.A. No. 00-1167 (GEB), 2010 U.S. Dist. LEXIS 32291 at *15-16 (D.N.J. Mar. 30,

---

[7] Ignoring the facts alleged by Defendants, Plaintiff cites case law for the proposition that intent cannot be inferred from materiality and that the absence of a good faith explanation cannot, ***by itself***, satisfy the deceptive intent element. However, Defendants do not rely solely on the materiality of the misrepresentations or the lack of any good faith explanation to infer intent.

2010) (finding sufficient a pleading of inequitable conduct that contained "the identification of the individuals involved, the information withheld, and why it was material," because "in lieu of a confession by the plaintiff that it 'intended to withhold the Hollister patent from the USPTO,' there is little more [defendant] could allege to state a claim for inequitable conduct").

The result is the same for the '926 patent. Defendants provided detailed allegations that the Applicants:

- made substantive changes to the '926 application as compared to the '097 application (D.I. 29 at ¶ 56);

- filed the '926 application as a continuation of the '097 application despite knowing they had substantively changed the application to introduce new matter (D.I. 29 at ¶ 57);

- knew that the PTO determines an application's effective filing date—and the corresponding time frame for prior art—differently depending on whether an application is a continuation (adding no new matter) or a continuation-in-part (adding new matter) (D.I. 29 at ¶ 61);

- knew that they would lose the benefit of the earlier filing date if the PTO knew of the extent of the changes (D.I. 29 at ¶ 62); and

- on information and belief, intentionally failed to alert the PTO to the new matter included in the '926 application, so that the PTO could not identify and consider intervening prior art (D.I. 29 at ¶ 64).

The allegations clearly support the inference that the Applicants intended to deceive the PTO in order to secure an improper, earlier priority date for the '926 application, and thereby avoid prior art that became available between 2001 and 2007. *See, e.g., Cargill, Inc. v Cambra Foods, Ltd.*, 476 F.3d 1359, 1366 (Fed. Cir. 2007) ("intent may be inferred where a patent applicant knows … that withheld information would be material to the PTO's consideration of the patent application") (citations omitted); *Leader Techs.*, 2010 U.S. Dist. LEXIS 63493 at *12-13 (D. Del. June 24, 2010) (finding intent to deceive adequately alleged based on facts including: withholding material information from the PTO, knowledge of that information by one of the

named inventors, and knowledge of that inventor that obtaining the patent was crucial to the success of the company).

Thus, Defendants' pleadings contain much more than is necessary to allege intent to deceive the PTO.

## B.     Alternatively, Defendants Seek Leave to Amend Their Pleadings

As explained above, Defendants' pleadings are sufficient.  Nevertheless, each of the purported deficiencies identified in Plaintiff's motion is easily addressed.  Accordingly, Defendants attach a proposed, amended answer and counterclaim that addresses explicitly, and in great detail, each of the issues raised by Defendants in its motion. *See* Ex. A at ¶¶ 37, 38.  To the extent the Court finds any of Plaintiff's arguments meritorious, Defendants seek leave to amend to file the accompanying amended pleading.

To address Plaintiff's first complaint of insufficient detail regarding the identification of the changes where the Applicants sought to introduce new matter, Defendants have now included the exact sections of text from the sections of the amendments that Defendants had previously identified in the original pleadings, and have highlighted the relevant changed words and phrases. *See* Ex. A at ¶¶ 37(a)-(l); 60(a)-(f).  Specifically, the proposed amended pleading addresses Plaintiff's allegation that Defendants did not identify the specific instances in which the Applicants sought to introduce new matter.  For example, Defendants' revised pleading explicitly identifies instances in which Applicants repeatedly and consistently removed references to vector-specific terms such as "scalable *vector* representation," "*vector* format" and "*vector* display" because they intended that the amendments to the specification and claims

could or would support a broader scope of the invention.[8] *See* Ex. A at ¶¶ 29 at 37(a)-(l), 39-40, 60(a)-(f), 62-63.

Similarly, Plaintiff objected that Defendants had not identified specific claims affected by the inequitable conduct. In the proposed amended pleading, Defendants have explicitly identified the claims and claim limitations affected by the Applicants' inequitable conduct, which renders both asserted patents unenforceable. *See, e.g.*, Ex. A at ¶¶ 37(l), 60(f).

Likewise, although Defendants' current pleadings clearly provide more than sufficient factual support for an inference of intent to deceive, Defendants' proposed amended pleading expressly adds facts that further support the inference that the Applicants acted with the intent to deceive the PTO. *See* Ex. A at ¶¶ 37(a)-(l), 38, 39, 41, 44, 60(a)-(f), 61-63, 71 and 72.

Accordingly, to the extent the Court deems Defendants' current pleading insufficient, Defendants request permission to amend at this early stage in the proceedings. *See* Fed. Civ. R. P. 15(a) ("The court should freely give leave when justice so requires."); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings should be liberally granted."). The Third Circuit has held that the "grant or deny leave to amend lies within the discretion of the Court, and factors the Court should consider in exercising its discretion include

---

[8] As the identified amendments make clear, the Applicants sought to replace the "vector"-based invention that they had described and claimed for six years, and replace it with a broader formulation of the invention. Particularly to the extent terms like "scalable content" are construed as not limited to the Applicants' "vector"-based invention, the removal of the explicit "vector" limitations is a classic example of introducing broadening "new matter" into the disclosure. *See, e.g.*, *Anascape, Ltd. v. Nintendo of America, Inc.*, 601 F.3d 1333, 1338 (Fed. Cir. 2010) ("A description can be broadened by removing limitations."); *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1344 (Fed. Cir. 2008) ("the examiner rightly refused to allow the applicants to amend the specification to remove references to 'heat' as the way of sealing the sleeve," for the change "would have broadened the patent and introduced impermissible new matter").

'undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The litigation is still at an early stage, no deadline for amending the pleadings has been set, and the pleadings Defendants seek to amend were filed just over a month ago. Thus, there can be no claim of undue delay, bad faith, dilatory motive or prejudice. *See Mylan Pharms., L.P.*, 2010 U.S. Dist. LEXIS 64565, at *3-10 (granting defendant leave to amend its inequitable conduct pleading four month after scheduled deadline where there was no evidence of undue prejudice, bad faith or dilatory motive). Furthermore, granting leave to amend would not be futile, as Defendants' allegations of inequitable conduct clearly are neither frivolous nor "legally insufficient on [their] face." *See id.* at *4 ("An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted, or advances a claim or defense that is legally insufficient on its face.").

**C.    Plaintiff Did Not Meaningfully Meet and Confer Before Filing Its Motion**

This motion should not have been filed and would have been unnecessary had Plaintiff meaningfully conferred with Defendants in advance of filing its motion. Plaintiff refused to do so.[9] Despite receiving Defendants' answers on January 3, 2011, Plaintiff first raised its objection to the sufficiency of Defendants' inequitable conduct pleading on January 20, 2011, and even then did not identify or explain any purported deficiencies. *See* Declaration of Brian A. Ankenbrandt ("Ankenbrandt Decl.") Ex. 1 (January 20, 2011 Emails Between Brian A. Ankenbrandt and Amir Naini) at 3.

---

[9]  Although Plaintiff styles its motion as seeking to "dismiss or strike" Defendants' inequitable conduct defenses, the motion merely seeks to strike a single defense and clearly is not case-dispositive. Thus, the meet-and-confer requirements of Local Rule 7.1.1. should apply.

The business day before filing its motion, Plaintiff provided a cursory, partial description of the basis for its motion: the failure to identify the specific amendments containing the new matter and the claims affected by those amendments.[10]  *See* Ankenbrandt Decl., Ex. 2 (January 23-24 Emails between Brian A. Ankenbrandt and Amir Naini) at 3.  At no time did Plaintiff raise the sufficiency of Defendants' allegations concerning intent to deceive the PTO, an argument which makes up a third of Plaintiff's motion to strike.  Motion at 7-8.  Thus, Plaintiff did not fully identify the basis for the motion or provide adequate advance notice of *any* purported deficiencies.

Although Defendants informed Plaintiff that they would be willing to amend to address any supposed deficiencies in the original pleadings, Plaintiff proceeded with the present motion. *See* Ankenbrandt Decl., Ex. 2 at 2.  Had Plaintiff provided Defendants a reasonable opportunity to address the supposed deficiencies, Defendants easily could have done so, obviating the need for motion practice.  In sum, this is precisely the kind of motion practice that a meaningful meet and confer could have avoided.

## IV.  CONCLUSION

For the reasons set forth herein, Defendants respectfully request that Plaintiff's motion be denied.  In the alternative, Defendants respectfully seek leave to amend.

---

[10]  This presents the second time in which Plaintiff has sought to meet and confer regarding a motion one business day before filing the motion—the first being when Plaintiff filed its motion for leave to amend its complaint to assert the '926 patent.  Defendants renew the request made in their response to Plaintiff's motion for leave to amend that, in connection with any future motion, Plaintiff make a reasonable attempt to reach agreement on the matters set forth in the motion before filing, as required by Local Rule 7.1.1.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Josh A. Krevitt
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Tel:  (212) 351-2490

By:  */s/ David E. Moore*
     Richard L. Horwitz (#2246)
     David E. Moore (#3983)
     Hercules Plaza 6th Floor
     1313 N. Market Street
     Wilmington, DE  19899
     Tel:  (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

Brian Ankenbrandt
GIBSON DUNN & CRUTCHER LLP
1801 California Street
Denver, CO  80202-2642
Tel:  (303) 298-5923

*Attorneys for Defendants Apple Inc. and
AT&T Mobility LLC*

Dated:  February 7, 2011
999952 / 35692

15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 7, 2011, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I hereby certify that on February 7, 2011, the attached document was electronically

mailed to the following person(s)

Steven L. Caponi
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
caponi@blankrome.com

Morgan Chu
Samuel K. Lu
Amir Naini
Craig Johnson
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
mchu@irell.com
slu@irell.com
anaini@irell.com
cjohnson@irell.com


By: */s/ David E. Moore*
    Richard L. Horwitz
    David E. Moore
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

973077 / 35692