```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -
     SOFTVIEW LLC,
 4                                      :      CIVIL ACTION
                 Plaintiff,             :
 5                                      :
                      v.                :
 6                                      :
     APPLE INC., and AT&T MOBILITY LLC, :
 7                                      :     NO. 10-389 (LPS)
                 Defendants.
 8                              - - -

 9                          Wilmington, Delaware
                          Tuesday, February 8, 2011
10                          Telephone Conference

11                              - - -

12   BEFORE:        HONORABLE LEONARD P. STARK, U.S.D.C.J.

13   APPEARANCES:                - - -

14
                  BLANK ROME, LLP
15                BY:  STEVEN L. CAPONI, ESQ.

16                    and

17                IRELL & MANELLA
                  BY:  AMIR NAINI, ESQ., and
18                     SAMUEL K. LU, ESQ.
                      (Los Angeles, California)
19
                          Counsel for Plaintiff
20

21                POTTER, ANDERSON & CORROON, LLP
                  BY:  DAVID E. MOORE, ESQ.
22
                      and
23

24
                                  Brian P. Gaffigan
25                                Registered Merit Reporter
```

1  APPEARANCES:  (Continued)

2

3  GIBSON DUNN & CRUTCHER, LLC
   BY:   JOSH A. KREVITT, ESQ.
         (New York, New York)

4

5  and

6  GIBSON DUNN & CRUTCHER, LLC
   BY:   BRIAN ANKENBRANDT, ESQ.
         (Denver, Colorado)

7

8  Counsel for Defendants

9

10

11  - oOo -

12  P R O C E E D I N G S

13  (REPORTER'S NOTE:  The following telephone

14  conference was held in chambers, beginning at 2:07 p.m.)

15  THE COURT:  Good afternoon, everybody.  This is

16  Judge Stark.  Who is there, please?

17  MR. CAPONI:  Your Honor, it's Steve Caponi from

18  Blank Rome for the plaintiff.  Along with me is Samuel Lu

19  and Amir Naini from Irell & Manella.

20  THE COURT:  Okay.

21  MR. MOORE:  Only behalf of the defendants,

22  your Honor, David Moore at Potter Anderson.  With me on

23  the line are Josh Krevitt and Brian Ankenbrandt from Gibson

24  Dunn.

25  THE COURT:  Okay.  Good afternoon.

1          MR. KREVITT:  Good afternoon, your Honor.

2          THE COURT:  Good afternoon.

3          Is that the only group of defendants just the

4     one?

5          (Unidentified Speaker):  Yes, your Honor.

6          THE COURT:  So I have a court reporter with me;

7     and for the record, it's our case of SoftView LLC v Apple

8     Inc. et al, Civil Action No. 10-389-LPS, and this is the

9     time for our scheduling conference.

10          It seems the parties did not agree about just

11     about anything in the proposed scheduling order so I want to

12     give each side a chance to help me focus on the numerous

13     disputes and give me a sense as to why I should go with the

14     way you see it.

15          So let me first hear from the plaintiffs.

16          MR. NAINI:  Your Honor, this is Amir Naini, from

17     Irell & Manella for the plaintiffs.

18          I think one of the main issues in the two

19     proposals has to do with whether, and when, SoftView, the

20     plaintiff, should limit its asserted claims; and, if so,

21     what that number of claims should be at this stage of the

22     case where we are just getting into discovery and we haven't

23     received invalidity contention responses at all for one of

24     the patents in suit and we haven't received what we think

25     our final responses for the patent in suit.

1          We're at a stage where we need to see how the

2    case proceeds to determine when we can limit the asserted

3    claims.  We fully intend to obviously for trial and we fully

4    intend to before trial to streamline the case.  But at this

5    stage, to set a deadline we think is not necessary or even

6    feasible because we need to see how the case unfolds before

7    we can set a sensible deadline for the limitation of

8    asserted claims.

9          One of the things that we will need, we think

10   we're entitled to, are final responses to invalidity

11   contention interrogatories for the plaintiffs so we can

12   limit our asserted claims in light of final responses that

13   we can rely on.

14         This issue in our mind is linked to the issue

15   whether we can set deadlines as SoftView proposes for final

16   responses both to infringement contention interrogatories

17   and then after a reasonable amount of time, three weeks I

18   believe in our proposal, to invalidity contention

19   interrogatories.

20         THE COURT:  So you want a deadline for them on

21   the interrogatories responses but no deadline for you on

22   limiting the asserted claims?

23         MR. NAINI:  Well, to be clear, we would set

24   deadlines both for ourselves for infringement contentions

25   and for them for invalidity contentions, but then we don't

```
 1    feel at this time it's feasible to set a deadline for

 2    until we see how the case proceeds, we see if we can get

 3    final responses to invalidity contention interrogatories

 4    so SoftView can be in a position to limit its asserted

 5    claims.

 6                   THE COURT:  Okay.  Are there any other sort of

 7    broad issues or even specific issues that you want issues

 8    that you want me to focus on?

 9                   MR. NAINI:  Well, the other major issue at play

10    runs through all the proposed dates and that is the issue of

11    when trial should be set.

12                   We have suggested a trial start date that is a

13    little over two years after the filing of the complaint in

14    this action, in late July of 2012, and the defendants have

15    proposed a date in December of that year.  So we based our

16    proposal based on what this Court has been doing from what

17    we can tell in other cases, and it is about 26 months or so,

18    27 months after the filing of the complaint.

19                   THE COURT:  Okay.  Let's hear from defendants

20    then.

21                   MR. KREVITT:  Your Honor, this is Josh Krevitt

22    from Gibson Dunn.  And I'm happy to address the issues,

23    obviously, in any way and in any order that your Honor would

24    like.

25                   Let me start this way unless your Honor has a
```

1    different preference.  I understand the comment at the

2    outset that it appears the parties have not agreed too much,

3    and that certainly, given our submission, a reasonable

4    comment.

5            Most of the dispute turns I think on the dates

6    and a difference of opinion as to when the trial date should

7    be.  My strong sense is that with the Court's guidance on

8    what an appropriate trial date is, the parties would be able

9    to roll up their sleeves and make either a joint suggestion

10   or something very close to a joint suggestion on all the

11   dates between now and then.

12           As to the trial date, the defendants proposed

13   December 10, 2012, which is about 22 months from now.  Of

14   course, that was not an arbitrary selection.  I will tell

15   you, your Honor, that we looked at other scheduling orders

16   that your Honor has put in place, including in certain

17   instances cases in which we are involved, and this is less

18   time than all of the other ones, at least all the other ones

19   we could find, so I don't represent to your Honor that we

20   were able to do an exhaustive search but we looked at half a

21   dozen or so, and time from complaint to trial is less here

22   and time from scheduling conference to trial is less in

23   defendants' proposal.

24           So we considered actually proposing a longer

25   schedule, we think that might be warranted, but tried to

1    propose instead as aggressive and, in our view, reasonable

2    schedule as possible and that puts it, as I said, at

3    December 10, 2012.

4            I'd be happy to explain why we think that is

5    appropriate beyond just the fact that it is shorter than

6    all the other scheduling orders that we could find that your

7    Honor has put in place.

8            Just one recent one I wanted to mention, your

9    Honor, because I was involved in a schedule in the Fair

10   Isaacs v Actimize case and your Honor put in place, from

11   the scheduling conference, a trial that was over two years.

12   Our proposal, of course, is under two years by a few months

13   and that was some three years or so from the filing of the

14   complaint in that other case; and our proposal here is

15   meaningfully less than that, about two years from the filing

16   of the original complaint.

17           I should also note there has been an amended

18   complaint filed which added a patent relatively recently.

19   It was filed in December of last year, so just a couple

20   months ago.

21           So the schedule, in our view, is actually

22   aggressive given all that needs to happen in this case, the

23   allegations in this case, and what your Honor is doing in

24   other cases.

25           As to a couple other issues that were raised

1    that I want to address.  One is to limit claims, your Honor.

2              As Your Honor knows, courts routinely order

3    plaintiffs to limit the number of claims in cases.  This

4    court has done it repeatedly.  Courts increasingly are

5    putting it into the scheduling order, and it just makes good

6    sense.  Every plaintiff, every single plaintiff in every

7    case I have been involved in says exactly what your Honor

8    just heard from the plaintiff in this case:  We will do it,

9    we'll do it at the right time, we'll do it before trial, but

10   with no commitment as to when to do it.

11             Limiting the claims, your Honor, is particularly

12   necessary and appropriate in this case.  There are two

13   patents in suit in this case, your Honor, and the plaintiff

14   has asserted 350 claims, nearly every single claim in the

15   two patents.  Some 90 percent, to be more precise, of the

16   claims in the two patents.  350 claims.

17             There is, in our view, your Honor, just simply

18   no justification.  In case after case, courts have looked

19   at 30 claims, 40 claims and said that it is way too many

20   and require the plaintiff to limit the number of claims.

21             Your Honor did that recently, as you know, in

22   the Personalized User Model case, limiting just from 36

23   claims to 15, cut the number of claims in half from 36.

24             There are 10 times the number of claims, almost

25   every single claim being asserted in this case.  And what

1    we did, your Honor, is we proposed what we believe to be a

2    reasonable mechanism.

3              Again, your Honor, we contemplated proposing a

4    more aggressive schedule and limitation but went ultimately

5    with something that we thought was very reasonable, and that

6    would be that at the outset of the case, the plaintiff would

7    be required to limit the number of claims.  We proposed 15,

8    and we had a date in the proposed scheduling order of

9    March 11th for that.  Obviously, it wouldn't be exactly that

10   date but we think it should be right at the outset of the

11   case.

12             And we then have a second date which would be

13   after the close of fact discovery but before expert reports

14   in which the plaintiff would be required to do a further

15   limiting.  We proposed March of next year and the plaintiff

16   would be required to limit the claims to eight.

17             In case after case, those limitations have

18   been put in place not only as part of scheduling orders,

19   your Honor, but before Markman, before the close of fact

20   discovery, before final contentions, and so we would propose

21   that it makes sense to do so here, particularly given the

22   350 claims the plaintiff is now asserting.

23             Finally, your Honor, the other issue that was

24   raised, and then, of course, I'd be happy to address any

25   questions you have, is with respect to contentions.

1          Just to be clear, the parties both agree that

2    contention interrogatories are appropriate.  They should be

3    served and responded to early.  Your Honor has that in the

4    form scheduling order.  The parties included that without

5    modification in the order that the parties submitted to the

6    Court.

7          There is no question that contention

8    interrogatories are appropriate.  They have already been

9    served.  They already have been responded.  Neither side

10   is yet pleased with the other side's responses, but they're

11   out there, and the parties are free to seek the Court's

12   intervention, of course, in the event through meet and

13   confer either party is not satisfied with the responses.

14         What we object to is the introduction which I

15   would note, for what it's worth, this Court has never done

16   of a specific date in the scheduling order very soon for

17   final contentions, infringement, and then invalidity

18   contentions.

19         We would suggest instead that the Court's order

20   is sufficient to address contention interrogatories given

21   that the parties have both served and responded to them and

22   that we proceed with the type of scheduling order this Court

23   has put in place each and every time which thus encourages

24   early contention interrogatories and provides access to the

25   Court in the event that either party is not satisfied with

1   the other party's response.

2           So those are the big ticket issues, your Honor.

3   Some of the other issues addressed as disputes are hours for

4   depositions and number of interrogatories and things like

5   that, but the big ticket ones are the ones that I have just

6   addressed.

7           THE COURT:  All right.  Thank you, Mr. Krevitt.

8   Let me ask you a question.

9           One thing that we might hear from Mr. Naini

10  in response, which I often hear, is plaintiffs don't want

11  to narrow the asserted claims until after they get the

12  claim construction order, which on either of your schedules

13  is some time down the road.  What is your response to

14  that?

15          MR. KREVITT:  I guess I have a few responses

16  very quickly, your Honor.

17          First, virtually every case to address this

18  issue has required the limitation of claims before Markman,

19  so it would be anomalous to do it after Markman.  The only

20  time it is done after Markman was where it didn't raise it

21  or the Court, on its own, didn't raise it until after

22  Markman.  But every time any court in any jurisdiction has

23  been asked to do this, it's done prior to Markman.

24          And for good reason, which is the second point

25  I would make, which is particularly with 350 claims, the

1    Markman process is at risk of becoming completely

2    impractical.

3              Now, of course, your Honor can say I'm only

4    going to construe 12 terms, so your Honor can put whatever

5    constraints on the Markman process the Court wishes.  But

6    as your Honor also knows, it is necessary for the Court to

7    construe any claim terms for which there is a dispute

8    regarding the appropriate construction.  And so as part

9    of that process, as part of an orderly process for the

10   development of the claims of the defenses in this case and

11   leading into claim construction, it is critical that the

12   plaintiffs be required well in advance of the Markman

13   process to select the claims that they're going to proceed

14   with in this case, at least an initial cut, at least the

15   first cut.  Whether it's down to the few claims at trial is

16   a different matter, but they certainly should be required to

17   reduce it to a dozen or so claims to allow the parties to

18   proceed to Markman.  And,

19             Finally, your Honor, this is, of course, the

20   plaintiff's case.  The plaintiff has presumably a Rule 11

21   basis to bring this case.  As Your Honor knows, involved in

22   that process is not only an analysis of the defendants'

23   products but a claim construction.  So the defendants, one

24   can presume, have already developed what they believe are

25   the appropriate claim construction positions for these

1   patents.

2            Given all that information that the plaintiff

3   has, and the need for this case to proceed in a reasonable

4   way, particularly given the hundreds and hundreds of

5   asserted claims now, we believe it's critical that the

6   claims be limited well, well in advance of Markman to allow

7   discovery to proceed in a reasonable, fair way.  Otherwise,

8   it is, I respectfully submit, your Honor, just harassing for

9   the plaintiff to be able to assert hundreds of claims when

10  we all know on this call that the plaintiff won't go to

11  trial or even proceed to expert reports with anything but a

12  tiny, tiny fraction of that number of claims.

13            MR. NAINI:  Your Honor.

14            THE COURT:  Hold on.

15            So, Mr. Krevitt, if I understand the plaintiff's

16  position, I think they largely agree with you; and as you

17  say, we all know this case is going to get cut down in time.

18  What would be unusual in my experience is giving them a

19  specific number and a specific deadline at this early point

20  in the case.

21            I understand you are representing that other

22  courts are doing that, but just focus me for a minute on why

23  I should, sitting here at the very beginning of the case,

24  having just heard today a little bit about the case and

25  really knowing almost nothing about the substance of it, why

1    I should be confident that I could impose such deadlines at

2    this early point.

3              MR. KREVITT:  Well, your Honor, that is entirely

4    fair.  And, of course, we included it in the scheduling

5    order because we think it's appropriate.  But we also would

6    be more than willing, and it may be useful to the Court, to

7    submit a short brief on the subject in which we identify

8    those cases and provide in more detail the reasoning behind

9    the cases.

10             But your Honor did this relatively recently in

11   September of last year in the Personalized User Model v

12   Google case in which before the Markman hearing, before the

13   close of fact discovery, your Honor reduced the number of

14   asserted claims by order to 15 from 36, as I said earlier.

15             Judge Farnan did it many times, including in

16   the Power Integrations case, before the Markman hearing.  He

17   reduced the number of claims from 18 to 7.  So he considered

18   18 claims too many and reduced the number to less than --

19   or to fewer, excuse me, than half of that, to seven.

20             In the LG Display v AU Optronics case, in

21   February of last year, Judge Farnan also limited the number

22   of claims.  There had been nine patents asserted.  This is

23   all before Markman.  Nine patents asserted, and the Court

24   required the plaintiff to reduce the number of patents to

25   four, required the plaintiff to cut the number of patents

1    by more than half, and the number of claims to only seven

2    across the four patents.  So substantially all before

3    Markman, your Honor, all for the same reason.

4         Reasonable people could disagree as to whether

5    the right date is next week or next month or two months

6    from now, but in our view, your Honor, with 350 claims

7    asserted, virtually every single claim of the two patents,

8    an appropriate limitation both in terms of number of claims

9    asserted and the timing for that is necessary in order for

10   this case to proceed in a fair and reasonable way.

11        As I said, your Honor, I know you are hearing it

12   for the first time on this call.  If it would be helpful, we

13   would be very happy to submit a brief to your Honor.

14        THE COURT:  Okay.  Thank you.  Let me hear a

15   response from the plaintiff, please.

16        MR. NAINI:  This is Amir Naini, your Honor.

17        On the issue of how many claims there are at

18   issue, at this point in the case, there are 350 claims,

19   approximately, that have been asserted across the two

20   patents.  That is because we have infringement reads which

21   we provided and detailed claim charts to the defendants on

22   those claims.

23        Now, those claims are not 350 unrelated claims.

24   They share claim language.  They can be dealt with at

25   Markman we believe very efficiently because of that sharing

1    of claim language, but they are slightly different from one

2    another, sometimes more different than in others.  But the

3    point is we took a look at each claim that we had an

4    infringement read on and we provided the claim charts and

5    it ended up being 350 claims.  The task at Markman and the

6    task for expert reports will not be 350 times more work for

7    350 claims than it is for one claim in this case.

8            We understand that you don't have the claims in

9    front of you.  We haven't gotten to a point in the case

10   where you can see the similarities of the claim terms, but

11   we believe they are highly similar, and it's apparent from

12   just looking at the language of the claims and comparing one

13   claim to another.

14           The other thing that I wanted to get into a

15   bit more detail on is our concern about the responses to

16   invalidity contention interrogatories, because we don't want

17   to get to a point in the case where we have limited our

18   asserted claims to a very small number and then defendants

19   come forward with prior art that they were aware of, that

20   they are aware of now but they haven't disclosed to us yet,

21   only after we've limited our asserted claims.

22           We would be happy to consider a procedure

23   whereby we adopt a good cause standard, as is used in

24   some other districts under their local patent rules, where

25   responses to invalidity contention interrogs can't be

1   expanded or supplemented without good cause so that we know

2   that we will get everything that the defendants are aware

3   of at the present time.

4           The reason we're a little suspicious, quite

5   frankly, is that the defendants haven't identified any prior

6   art in their responses that hasn't already been cited to the

7   PTO or was not already cited to the PTO during the prosecution

8   of the patents.

9           If that is all they have, then that is fine.

10  But, see, this illustrates one of the problems that we're

11  dealing with as the plaintiff in this case, dealing with the

12  request to limit our asserted claims, even though the claims

13  share some claim language, and it won't be overly burdensome

14  to proceed with the claims that we've asserted so far and go

15  forward with the case.

16          We're dealing with not getting responses from

17  the defendants and being put in a position where they

18  essentially want to go first on things where, in all

19  fairness, they should give us full information on first.

20          THE COURT:  Okay.  Thank you, counsel.

21          Let me tell you where we are, and this is just

22  at a clearly an interim point.  I'm not going to give you,

23  really other than one, much in the way of specific dates.

24  And I'm going to send you off with some of my thoughts

25  and have you meet and confer further and get a revised

1    submission to me by a week from today, which I'm confident

2    will have significantly narrowed the disputes, if not

3    resolved them.  But let me give you some thoughts on the two

4    broad issues that we discussed here.

5            The first one really, in my mind, is really a

6    focus on whether the scheduling order should itself set

7    interim dates for the reduction in the number of asserted

8    claims, and, somewhat relatedly, whether there should be

9    specific dates for responses to interrogatories.

10           My practice to this point, and while clearly

11   reasonable minds could differ and I'm always interested in

12   hearing how others are handling the same issues, my practice

13   is going to be applied in this case, which is I'm not, from

14   the start of the case in a scheduling order, going to impose

15   a specific deadline or a specific number of claims that

16   the plaintiff can assert at each stage of the case.  And,

17   likewise, I'm not going to set a deadline for when final

18   infringement and invalidity contention interrogatories need

19   to be responded to.  I think the case needs to play out at

20   least a little bit more before I will be in a position to

21   make that kind of case specific determination here.

22           In the past, when I have limited the number of

23   asserted claims, I believe I have done that in the context

24   of a dispute that has come up through the discovery disputes

25   procedures that we use and that are set out, of course, in

1    our form order and will be in your final scheduling order.

2    And that is the mechanism that I think works best for me in

3    resolving this type of issue.

4           But let me be clear; and I don't think there is

5    really any dispute on this.  Obviously, 350 claims is way

6    too many.  It's at least an order of magnitude too many, and

7    that pretty soon the plaintiff is going to have to reduce

8    the number of asserted claims; certainly, will have to take

9    a significant reduction some time before Markman; and I'm

10   sure additional reductions in the number of claims will

11   occur after that point.  But I can't, sitting here, give you

12   a specific date and a specific number.

13          Also, I'm quite willing and will, if necessary,

14   reduce the number of claim terms that will be construed at

15   the Markman hearing, but that, too, is not something I want

16   to do in a vacuum up front.

17          As the parties are exchanging their contentions

18   on the disputed claim terms that they think need to be

19   construed at the Markman hearing, if one side thinks the

20   other side is being unreasonable in the number, that is a

21   dispute that you can, and should, bring to the Court's

22   attention through the discovery matters procedure.  And I

23   will impose a limit that I find to be reasonable based on

24   what I know at that point about this case.

25          So in your proposal for next week, if you all

1    can agree on specific limits, that is fine.  I'll sign your

2    order if you are agreed on specific limits; but if you are

3    not agreed, then those are matters that just will be dealt

4    with in time through our discovery matters procedure, if you

5    remain in dispute about them going forward.

6             I'm not going to set any dates in this case

7    beyond the filing of case dispositive motions, so while I

8    appreciate the parties have worked to try to come up with

9    a target trial date, and we may well meet one or the other

10   of the trial date targets that the parties have proposed, at

11   this point, particularly given all the other many, many

12   cases that I am in the middle of scheduling, I'm only going

13   to schedule you through case dispositive motions.

14            And the only other thing I am going to say is I

15   am going to give you a Markman hearing date, and we will do

16   your Markman hearing on September 23rd, the date that the

17   plaintiff proposed, and we can do it at 1:00 p.m.  We can't

18   do it at 9:30 that morning.

19            So with that, my hope is that the parties can

20   agree on at least all of the dates up to that.  Hopefully,

21   they can agree on the case dispositive motion date as well.

22   And as I say, the dates for pretrial conference and trial

23   will be set at a later point in this case.

24            Are there any questions about any of that,

25   Mr. Naini?

1            MR. NAINI:  No, your Honor.  Thank you.  That

2   is very helpful in terms of coming to an agreement with

3   defendants.  I'm optimistic we will be able to do so.

4            THE COURT:  Mr. Krevitt, any questions?

5            MR. KREVITT:  No, your Honor.  Thank you very

6   much for your time and helpful guidance.

7            THE COURT:  Okay.  We'll look for your

8   submission next week.  Thank you all very much.

9            MR. KREVITT:  Thanks.

10            (Telephone conference ends at 2:36 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25