## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SOFTVIEW LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 10-389-LPS |
| v. | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| APPLE INC., *et al.,* | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT AT&T MOBILITY LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF SOFTVIEW'S ALLEGATIONS OF INDIRECT AND WILLFUL INFRINGEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

Josh A. Krevitt
H. Mark Lyon
Stuart M. Rosenberg
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-2490

*Attorneys for Defendant AT&T Mobility LLC*

Dated: March 8, 2012
1050464 / 35692

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .......................................................................................................... 1

II.  ARGUMENT ............................................................................................................... 1

    A.  SoftView's Allegations Of ATTM's Pre-Suit Knowledge Of The Patents-In-Suit Are Insufficient To Support Claims Of Indirect And Willful Infringement .......................................................................................................... 1

        1.  ATTM Had No Pre-Suit Knowledge Of The '353 Patent ......................... 2

            a.  Relationship With Apple ................................................................ 2

            b.  BellSouth Patent Citation ............................................................. 3

        2.  ATTM Had No Pre-Suit Knowledge Of The '926 Patent ......................... 5

    B.  SoftView's Allegations Of ATTM's Post-Suit Knowledge Of The Patents-In-Suit Are Insufficient To Support Indirect And Willful Infringement Claims .......................................................................................................... 5

        1.  Post-Suit Knowledge Of The Patents-In-Suit Is Insufficient To Support A Claim For Indirect Infringement ............................................... 6

        2.  Post-Suit Knowledge Of The Patents-In-Suit Is Insufficient To Support A Claim For Willful Infringement ................................................ 7

        3.  Reliance On Post-Suit Knowledge Of The Patents-In-Suit Limits SoftView's Claims To Post-Suit Conduct ................................................. 8

III.  CONCLUSION ............................................................................................................ 8

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*,
450 F.3d 130 (3d Cir. 2006) ............................................................................... 3

*Eon Corp. IP Holdings LLC v. Flo TV Inc.*,
C.A. No. 10-812-SLR, 2011 WL 2708945 (D. Del. July 12, 2011) ........................ 5

*In re Seagate Tech., LLC*,
497 F.3d 1360 (Fed. Cir. 2007) .......................................................................... 7

*IPVenture, Inc. v. Cellco P'ship*,
No. C 10-04755 JSW, 2011 WL 207978 (N.D. Cal. Jan 21, 2011) ........................ 7

*Mallinckrodt Inc. v. E-Z-Em Inc.*,
670 F. Supp. 2d 349 (D. Del. 2009) .................................................................... 6

*Mallinckrodt Inc. v. E-Z-Em Inc.*,
671 F. Supp. 2d 563 (D. Del. 2009) .................................................................... 4

*Minkus Electronic Display Sys. v. Adaptive Micro Sys. LLC.*,
C.A. No. 10-666-SLR, 2011 WL 941197 (D. Del. Mar. 16, 2011) ........................ 8

*Pathfinder Mgmt., Inc. v. Mayne Pharma, Inc.*,
No. 06-2204 (WJM), 2009 WL 4250061 (D.N.J. Nov. 25, 2009) ........................ 3

*Processed Egg Prods. Antitrust Litig.*,
No. 08-md-02002, 2011 WL 4465355 (E.D. Pa. Sept. 26, 2011) ........................ 3

*Solannex, Inc. v. MiaSole*,
No. C 11-00171 PSG, 2011 WL 4021558 (N.D. Cal. Sept. 9, 2011) ...................... 7

*State Industries, Inc. v. A.O. Smith Corp.*,
751 F.3d 1226 (Fed. Cir. 1985) .......................................................................... 4

*Webmap Techs., LLC v. Google, Inc.*,
No. 2:09-CV-343-DF-CE, 2010 WL 3768097 (E.D. Tex. Sept. 10, 2010) .............. 7

*XPoint Technologies, Inc. v. Microsoft Corp.*,
730 F. Supp. 2d 349 (D. Del. 2010) .................................................................... 6

# I.    INTRODUCTION

The indirect and willful infringement claims filed against defendant AT&T Mobility LLC ("ATTM") by plaintiff SoftView LLC ("SoftView") in its Third Amended Complaint are deficient and ought to be dismissed under Rule 12(b)(6).  SoftView's opposition brief does not offer any persuasive argument to the contrary.  While SoftView purports to allege three "independent bases" for its indirect infringement claims, each basis is deficient, for the very reasons identified in ATTM's opening brief.

SoftView also fails to defend its willful infringement claims at all, instead lumping its arguments in support of its indirect and willful infringement claims together.  But it is quite clear that a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct, and here SoftView's allegations fail without question.

Finally, SoftView's opposition seems to concede that to the extent its indirect and willful infringement claims are based only on the filing of the complaint providing ATTM with the requisite knowledge of the asserted patents, such claims must apply only to ATTM's post-filing conduct.  Thus, ATTM respectfully requests that the Court dismiss SoftView's indirect and willful infringement claims, or, barring such complete relief, at least dismiss these claims with respect to the period before ATTM was served with the Complaint.

# II.    ARGUMENT

## A.    SoftView's Allegations Of ATTM's Pre-Suit Knowledge Of The Patents-In-Suit Are Insufficient To Support Claims Of Indirect And Willful Infringement

SoftView claims that its Third Amended Complaint alleges three separate bases for ATTM's knowledge of the patents-in-suit.  (D.I. 241, at 4).  Two of these bases allege pre-suit knowledge, and the third simply alleges that ATTM had knowledge of the patents-in-suit from

the filing of SoftView's original and First Amended Complaint.  SoftView argues against

ATTM's assertion that SoftView must allege knowledge of the patents-in-suit *prior* to the filing

of the present action, but fails to provide adequate support for its contentions.  In attempting to

defend its claims, SoftView has oversimplified a complicated issue, and fails to distinguish the

important differences between indirect and willful infringement, and between pre-suit and post-

suit knowledge of the patents-in-suit.  SoftView's allegations regarding pre-suit knowledge of

the patents-in-suit, as discussed below, are factually insufficient, and do not allow the Court to

make a reasonable inference that ATTM had pre-suit knowledge of the patents.

### 1.      ATTM Had No Pre-Suit Knowledge Of The '353 Patent

SoftView cites two bases for ATTM's alleged pre-suit knowledge of the '353 patent.

First, SoftView alleges that ATTM had knowledge of the '353 patent because its alleged

subsidiary, BellSouth Intellectual Property Corp., was issued a patent in 2006 that cited the

application for the '353 patent's parent application.  (D.I. 241, at 4, 10-12).  Second, SoftView

alleges that because ATTM was the exclusive seller of the iPhone for almost two years, the

"close relationship" between Apple and ATTM likely included the sharing of information about

relevant intellectual property.  (*Id.* at 4, 9).  As discussed further below, each of these allegations

are factually insufficient to support SoftView's claim that ATTM had knowledge of the patents-

in-suit prior to the filing of the original complaint.

### a.      Relationship With Apple

SoftView argues that it adequately pled that ATTM had knowledge of the '353 patent due

to its relationship with Apple Inc. – the maker of some of the accused products, such as the

iPhone and iPad.  (D.I. 241 at 4).  SoftView describes how ATTM, at least for a time, was the

exclusive telephone carrier for the iPhone in the United States, and SoftView leaps to the

conclusion that Apple therefore shared information about the patents-in-suit with ATTM.  (*Id.* at

9).  SoftView argues that it is "unlikely that [ATTM] would have invested time and effort into the iPhone, for example, without assurances that the iPhone would not be quickly pulled off the market due to patent concerns."  (*Id.*).  But such "assurances" can easily be provided by a supplier without providing every piece of conceivably relevant information about its products.  To infer otherwise is unreasonable.  A purchaser is rarely in a position to determine whether the products it purchases infringe a particular patent, so there is little reason for a supplier to inform the purchaser about every patent of which it is aware.  Instead, the supplier would simply give the purchaser its own assurances, when necessary, that its products do not infringe any patents.  To infer that Apple would inform ATTM of every patent that could conceivably be asserted against the iPhone simply is not reasonable.  Accordingly, the Court should not credit these arguments, and should dismiss the indirect and willful infringement claims against ATTM.  *See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 133 (3d Cir. 2006) ("[W]e need not credit the non-movants conclusions of law or unreasonable factual inferences.").

### b.    BellSouth Patent Citation

SoftView next alleges that ATTM had knowledge of the patents-in-suit because its alleged subsidiary, BellSouth Intellectual Property Corp. ("BellSouth"), cited the published parent application of the '353 patent in one of its own patents.  SoftView's allegations are flawed in many respects.

First, contrary to SoftView's allegations, it simply is not reasonable to infer that knowledge by a subsidiary always means that the parent also has the same knowledge.  In its opening brief, ATTM cited a number of cases that hold that the knowledge held by a subsidiary cannot be imputed to its parent corporation.  *See, e.g. Pathfinder Mgmt., Inc. v. Mayne Pharma, Inc.*, No. 06-2204 (WJM), 2009 WL 4250061 (D.N.J. Nov. 25, 2009); *Processed Egg Prods. Antitrust Litig.*, No. 08-md-02002, 2011 WL 4465355 (E.D. Pa. Sept. 26, 2011).  SoftView has

attempted to distinguish these cases on their particular facts, but has ignores one important similarity – these cases demonstrate the basic truth that information often does not flow from a subsidiary to a parent corporation. These courts held, each in their own way, that it is unfair to hold a parent responsible or liable for knowledge that only its subsidiary (or subsidiary's agents) may hold. This logic was persuasive in each instance because of the common understanding that information does not flow freely between distinct corporations, even when they are related. Thus it is hardly fair for SoftView to now conclude that because one of ATTM's subsidiaries may have had knowledge of a patent application, ATTM had the same knowledge.

Furthermore, SoftView does not in fact claim that even BellSouth knew of the '353 patent itself, but instead alleges that BellSouth knew of the *parent application* to what eventually issued as the '353 patent. As discussed in ATTM's opening brief, knowledge of a patent application is not the same as knowledge of an issued patent, and knowledge of a patent application does not guarantee knowledge of the later-issued patent. *See, e.g. State Indus., Inc. v. A.O. Smith Corp.*, 751 F.3d 1226, 1236 (Fed. Cir. 1985) (finding that filing an application "is no guarantee any patent will issue and a very substantial percentage of applications never result in patents"). While in some instances it might still be reasonable to infer that a defendant knew of the asserted patent after citing the patent application, this is not such a case.

For example, in *Mallinckrodt Inc. v. E-Z-Em Inc. (Mallinckrodt II)*, 671 F. Supp. 2d 563, 569 (D. Del. 2009), the Court held sufficient the allegations that the defendant knew of the asserted patent after citing the patent application in an information disclosure statement to the Patent and Trademark Office. There, only one logical inference was required – that the defendant knew of the application, and therefore likely knew of the issued patent. Here, SoftView's allegations are far more attenuated and implausible. SoftView alleges that ATTM

4

knew of a patent *application*, rather than the patent itself.  Next SoftView alleges that ATTM did

not even know of the actual patent application itself, but rather knew of the *parent* patent

application.

Finally, SoftView alleges that ATTM's *subsidiary* knew about the parent patent

application, not ATTM itself.  Thus, rather than requiring one logical inference like in

*Mallinckrodt II*, an entire chain of logical leaps are required to show that ATTM had knowledge

of the '353 patent based on BellSouth's citation to the parent application.  As a result, the

inferences that SoftView asks this Court to make are simply too attenuated and remote to support

an allegation that ATTM had knowledge of the patents-in-suit.  *See Eon Corp. IP Holdings LLC*

*v. Flo TV Inc.*, C.A. No. 10-812-SLR, 2011 WL 2708945 (D. Del. July 12, 2011) (finding

allegations that the defendant knew of the asserted patents to be insufficient where the link

between the asserted patent and defendants was "too tenuous to sustain an allegation of

knowledge").

### 2.    ATTM Had No Pre-Suit Knowledge Of The '926 Patent

SoftView's pre-suit allegations with respect to the '926 patent are even more inadequate

and implausible.  In fact, SoftView cannot reasonably allege that ATTM had pre-suit knowledge

of the '926 patent, because the patent did not issue until after SoftView's initial complaint was

filed.  As discussed below, SoftView's reliance on post-filing knowledge is insufficient to

support its allegations of indirect and willful infringement, and these allegations should therefore

be dismissed with respect to the '926 patent.

### B.    SoftView's Allegations Of ATTM's Post-Suit Knowledge Of The Patents-In-Suit Are Insufficient To Support Indirect And Willful Infringement Claims

In addition to its two allegations regarding ATTM's alleged pre-suit knowledge of the

patents-in-suit, SoftView alleges that ATTM had knowledge of the patents based on the filing of

SoftView's original and First Amended Complaint. SoftView seems to argue that such post-suit knowledge is sufficient to support both its indirect and willful infringement claims, but fails to provide any support with respect to its willful infringement claims. SoftView also seems to concede that any reliance on ATTM's post-filing knowledge of the patents-in-suit must necessarily limit SoftView's claims to post-filing conduct, and post-filing damages. SoftView's pre-filing claims should therefore be dismissed to the extent they are grounded on post-filing knowledge of the patents-in-suit.

### 1. Post-Suit Knowledge Of The Patents-In-Suit Is Insufficient To Support A Claim For Indirect Infringement

SoftView argues that post-suit knowledge of the patents-in-suit is sufficient to support its allegations of indirect infringement. (D.I. 241, at 7). While SoftView seems to admit that such post-suit knowledge would only adequately state a claim "for events occurring after the filing date of the complaint," (*Id.*), it still overstates the case law in this area. Numerous courts, including this one, have held that a defendant's knowledge of an asserted patent based on the filing of the complaint is insufficient to support a claim of indirect infringement. *See, e.g.*, *XPoint Technologies, Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349 (D. Del. 2010) ("[K]nowledge *after* filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement.") (emphasis added); *Mallinckrodt Inc. v. E-Z-Em Inc. (Mallinckrodt I)*, 670 F. Supp. 2d 349 (D. Del. 2009) ("The Court is not persuaded by Plaintiff's contention that the requisite knowledge can be established by the filing of the Plaintiff's Complaint."). SoftView points to other decisions in other cases, but cannot dispute that *XPoint* and *Mallinckrodt* support ATTM here. And one important principle is clear across all the relevant cases – even if post-suit conduct is deemed sufficient to state a claim for indirect infringement, that claim must be limited to the post-suit time period. Accordingly, the Court

6

should dismiss SoftView's indirect infringement claims, or at the very least, dismiss the claims with respect to ATTM's pre-filing conduct.

> ### 2.      Post-Suit Knowledge Of The Patents-In-Suit Is Insufficient To Support A Claim For Willful Infringement

Even if the filing of the complaint gave ATTM notice of the patents-in-suit, such knowledge is nonetheless insufficient to support SoftView's claim of willful infringement. While there is some conflict among the courts as to whether knowledge based on the filing of the complaint is sufficient for *indirect* infringement, the case law is quite clear that such knowledge is insufficient to support a *willful* infringement claim.  Even SoftView apparently does not dispute this, as it cites no case law to support its willful infringement claims based on ATTM's knowledge resulting from the filing of the complaint.  *See* (D.I. 241 at 7) (arguing that the filing of the complaint effectively alleges ATTM's knowledge of the patents in suit, "*at least with regard to indirect infringement*.") (emphasis added).  Indeed, it is quite clear that "a willful infringement claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct."  *In re Seagate Tech., LLC,* 497 F.3d 1360, 1374 (Fed. Cir. 2007).  Numerous courts have dismissed willful infringement claims for failure to sufficiently allege pre-suit knowledge of the asserted patents, and SoftView's halfhearted argument that its willful infringement claim is sufficient must similarly fail.  *See, e.g.*, *Solannex, Inc. v. MiaSole*, No. C 11-00171 PSG, 2011 WL 4021558, at *3 (N.D. Cal. Sept. 9, 2011) (dismissing a claim of willful infringement because of the failure to allege pre-suit knowledge of the issued patent); *IPVenture, Inc. v. Cellco P'ship*, No. C 10-04755-JSW, 2011 WL 207978, at *2 (N.D. Cal. Jan 21, 2011) (dismissing a claim of willful infringement because of the failure to allege facts supporting pre-suit knowledge of the issued patent); *Webmap Techs., LLC v. Google, Inc.*, No. 2:09-CV-343-DF-CE, 2010 WL 3768097, at *4 (E.D. Tex. Sept. 10, 2010) (dismissing

a claim seeking willful infringement because it was based solely on post-filing conduct and plaintiff had not sought to abate the infringement).  While SoftView asks the Court to allow its willful infringement allegations to survive, it does not allege sufficient facts to support those allegations, and cites no authority to support its claims.  Accordingly, SoftView's willful infringement claims should be dismissed with respect to both pre-suit and post-suit time periods.

**3.     Reliance On Post-Suit Knowledge Of The Patents-In-Suit Limits SoftView's Claims To Post-Suit Conduct**

Finally, as discussed above, SoftView's reliance on the filing of the current action to support either its indirect or willful infringement claims must necessarily limit any alleged damages for alleged indirect or willful to the period of time after the filing of the suit.  *See* (D.I. 241 at 9) (arguing that *Minkus* "dictates that the filing of a complaint provides a defendant with knowledge sufficient to subject it to *liability for post-filing acts of inducement*.") (emphasis added).  While ATTM maintains that SoftView's reliance on post-suit knowledge of the patents-in-suit is insufficient to support any of its claims of indirect and willful infringement, at the very least such reliance must limit SoftView's alleged damages to the post-suit timeframe.  *See Minkus Electronic Display Sys. v. Adaptive Micro Sys. LLC.*, C.A. No. 10-666-SLR, 2011 WL 941197 (D. Del. Mar. 16, 2011).  Thus, if the Court concludes that the filing of the Complaint in this action was sufficient to impart knowledge of the patents-in-suit on ATTM for the purposes of either indirect or willful infringement, ATTM requests that the Court grant its motion in part, and limit SoftView's claims regarding indirect and willful infringement to conduct occurring after the filing of the Complaint.

## III.     CONCLUSION

For the foregoing reasons, ATTM respectfully requests that the Court grant ATTM's motion to dismiss Plaintiff's claims against ATTM for indirect and willful infringement as set

forth in paragraphs 38, 49-50, 56, and 67-68 and the Prayer for Relief of SoftView's Third

Amended Complaint.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:                          By:  */s/ David E. Moore*
                                          Richard L. Horwitz (#2246)
Josh A. Krevitt                           David E. Moore (#3983)
H. Mark Lyon                              Hercules Plaza 6th Floor
Stuart M. Rosenberg                       1313 N. Market Street
GIBSON DUNN & CRUTCHER LLP                Wilmington, DE  19899
200 Park Avenue                           Tel:  (302) 984-6000
New York, NY  10166-0193                  rhorwitz@potteranderson.com
Tel:  (212) 351-2490                      dmoore@potteranderson.com

Dated:  March 8, 2012                     *Attorneys for Defendant AT&T Mobility LLC*
1050464 / 35692

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 8, 2012, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I hereby certify that on March 8, 2012, the attached document was electronically mailed

to the following person(s)

Steven L. Caponi
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE  19801
caponi@blankrome.com
*Attorneys for Plaintiff*

Morgan Chu
Samuel K. Lu
Amir Naini
Dorian S. Berger
Craig Johnson
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276
mchu@irell.com
slu@irell.com
anaini@irell.com
dberger@irell.com
cjohnson@irell.com
*Attorneys for Plaintiff*

Steven J. Fineman
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
fineman@rlf.com
*Attorneys for Defendant Dell Inc.*

James W. Morado
Erik C. Olson
Farella Braun + Martel LLP
Russ Building
235 Montgomery Street
San Francisco, CA  94104
jmorado@fbm.com
eolson@fbm.com
*Attorneys for Defendant Dell Inc.*

John W. Shaw
Shaw Keller LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE  19801
jshaw@shawkeller.com
*Attorneys for Defendants Exedea, Inc., HTC*
*Corp., and HTC America, Inc.*

Frederick L. Cottrell, III
Anne Shea Gaza
Jason J. Rawnsley
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801
Cottrell@rlf.com
gaza@rlf.com
rawnsley@rlf.com
*Attorneys for Defendants Futurewei*
*Technologies, Inc., and Huawei Technologies*
*Co., Ltd.*

Scott Partridge
Masood Anjom
Baker Botts LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002
Scott.partridge@bakerbotts.com
Masood.anjom@bakerbotts.com
*Attorneys for Defendants Futurewei*
*Technologies, Inc., and Huawei Technologies*
*Co., Ltd.*

Jeffrey Sullivan
Brian Boerman
Baker Botts LLP
30 Rockefeller Plaza
New York, NY  10112
Jeffrey.sullivan@bakerbotts.com
Brian.boerman@bakerbotts.com
*Attorneys for Defendants Futurewei*
*Technologies, Inc., and Huawei Technologies*
*Co., Ltd.*

John C. Phillips, Jr.
Megan C. Haney
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE  19806
jcp@pgslaw.com
mch@pgslaw.com
*Attorneys for Defendants Kyocera Corp., and*
*Kyocera Wireless Corp.*

Michael A. Dorfman
Eric C. Cohen
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL  60661-3693
Michael.dorfman@kattenlaw.com
Eric.cohen@kattenlaw.com
*Attorneys for Defendants Kyocera Corp., and*
*Kyocera Wireless Corp.*

Gregory E. Stuhlman
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE  19801
stuhlmang@gtlaw.com
*Attorneys for Defendants LG Electronics, Inc.,*
*LG Electronics USA, Inc., and LG Electronics*
*Mobilecomm U.S.A., Inc.*

Herbert H. Finn
Eric J. Maiers
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL  60601
finnh@gtlaw.com
maierse@gtlaw.com
*Attorneys for Defendants LG Electronics, Inc.,*
*LG Electronics USA, Inc., and LG Electronics*
*Mobilecomm U.S.A., Inc.*

Jack B. Blumenfeld
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE  19801
jblumenfeld@mnat.com
*Attorneys for Defendant Motorola Mobility Inc.*

Adam W. Poff
Monté T. Squire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
apoff@ycst.com
msquire@ycst.com
*Attorneys for Defendants Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., and Samsung Telecommunications America, LLC*

Robert T. Haslam
Covington & Burling LLP
333 Twin Dolpin Drive, Suite 700
Redwood Shores, CA  94065
rhaslam@cov.com
*Attorneys for Defendants Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., and Samsung Telecommunications America, LLC*

Michael K. Plimack
Christine Saunders Haskett
Covington &Burling LLP
One Front Street, 35th Floor
San Francisco, CA  94111
mplimack@cov.com
haskettCS@cov.com
*Attorneys for Defendants Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., and Samsung Telecommunications America, LLC*

By:  */s/ David E. Moore*
     Richard L. Horwitz
     David E. Moore
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware 19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

973077 / 35692