1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

     SOFTVIEW LLC,
4                                        :  CIVIL ACTION
                 Plaintiff,              :
5                                        :
                     v.                  :
6                                        :
     APPLE INC., AT&T MOBILITY LLC, et al., :
7                                        :  NO. 10-389 (LPS)
                 Defendants.             :
8                              - - -

9                         Wilmington, Delaware
                          Tuesday, April 23, 2013
10                        *Telephone Conference*

11                             - - -

12   BEFORE:      HONORABLE **LEONARD P. STARK**, U.S.D.C.J.

13   APPEARANCES:                     - - -

14
                 BLANK ROME, LLP
15               BY:  STEVEN L. CAPONI, ESQ.

16                    and

17               IRELL & MANELLA
                 BY:  SAMUEL K. LU, ESQ.,
18                    ANDREW FERGUSON, ESQ.,
                      ZACHARY DAVIDSON, ESQ., and
19                    ELIZABETH IGLESIAS, ESQ.
                      (Los Angeles, California)
20
                      and
21
                 IRELL & MANELLA
22               BY:  PATRICK M. McGILL, ESQ.
                      (Newport Beach, California)
23
                          Counsel for SoftView, LLC
24

25                            Brian P. Gaffigan
                              Registered Merit Reporter

```
1    APPEARANCES:  (Continued)

2
                     POTTER, ANDERSON & CORROON, LLP
3                    BY:  DAVID E. MOORE, ESQ.

4                          and

5                    GIBSON DUNN & CRUTCHER, LLC
                     BY:  JOSH A. KREVITT, ESQ.
6                         (New York, New York)

7                          and

8                    GIBSON DUNN & CRUTCHER, LLC
                     BY:  H. MARK LYON, ESQ.,
9                         STUART M. ROSENBERG, ESQ., and
                          ALISON WATKINS, ESQ.
10                        (Palo Alto, California)

11                             Counsel for Apple Inc.
                               and AT&T Mobility LLC
12

13                   YOUNG CONAWAY STARGATT & TAYLOR, LLP
                     BY:  ADAM W. POFF, ESQ.
14
                           and
15
                     COVINGTON & BURLING, LLP
16                   BY:  CHRISTINE SAUNDERS HASKETT, ESQ.
                          (San Francisco, California)
17
                               Counsel on behalf of Samsung
18                             Telecommunications America, LLC

19
                     RICHARDS LAYTON & FINGER, LLP
20                   BY:  KATHARINE CRAWFORD LESTER, ESQ.

21                         and

22                   FARELLA BRAUN + MARTEL LLP
                     BY:  CATHLEEN G. GARRIGAN, ESQ.
23                        (San Francisco, California)

24                             Counsel on behalf of Dell, Inc.

25
```

```
1    APPEARANCES:  (Continued)

2
                MORRIS NICHOLS ARSHT & TUNNELL, LLP
3               BY:  JACK B. BLUMENFELD, ESQ.

4                    and

5               KILPATRICK TOWNSEND & STOCKTON, LLP
                BY:  WILLIAM H. BOICE, ESQ., and
6                    ALYSON L. WOOTEN, ESQ.
                     (Atlanta, Georgia)
7
                     and
8
                KILPATRICK TOWNSEND & STOCKTON, LLP
9               BY:  DANIEL S. YOUNG, ESQ., and
                     LAURA K. MULLENDORE, ESQ.
10                   (Denver, Colorado)

11                      Counsel for Motorola Mobility, Inc.
                        and AT&T Mobility, LLC
12

13              SHAW KELLER, LLP
                BY:  JOHN W. SHAW, ESQ.
14

15                      Counsel for HTC Corporation, and
                        HTC America, Inc.
16

17              RICHARDS LAYTON & FINGER, LLP
                BY:  FREDERICK L. COTTRELL, III, ESQ.
18
                     and
19
                BAKER BOTTS, LLP
20              BY:  ELIOT D. WILLIAMS, ESQ.
                     (New York, New York)
21
                        Counsel for Huawei Technologies, Co.,
22                      Ltd., Huawei Technologies USA and
                        Huawei Device USA Inc.
23

24

25
```

1    APPEARANCES:   (Continued)

2
                    GREENBERG TRAURIG, LLP
3                   BY:   GREGORY ERICH STUHLMAN, ESQ.

4                       and

5                   GREENBERG TRAURIG, LLP
                    BY:   HERBERT H. FINN, ESQ.
6                       (Chicago, Illinois)

7                           Counsel on behalf of LG Electronics,
                            Inc., LG Electronics USA, Inc., and LG
8                           Electronics Mobilecomm USA Inc.

9

10

11                              - oOo -

12                      P R O C E E D I N G S

13              (REPORTER'S NOTE:   The following telephone

14   conference was held in chambers, beginning at 9:20 a.m.)

15              THE COURT:   Good morning, everybody.   This is

16   Judge Stark.   Who is there, please?

17              MR. CAPONI:   Good morning, Your Honor.   For the

18   plaintiffs SoftView, Steve Caponi.   With me from Irell &

19   Manella is Sam Lu, Patrick McGill, Elizabeth Iglesias, Andy

20   Ferguson and Zach Davidson.

21              THE COURT:   Okay.

22              MR. BLUMENFELD:   Good morning, Your Honor.

23   It's Jack Blumenfeld for Morris Nichols for AT&T Mobility

24   and Motorola Mobility.   With me from Kilpatrick Townsend

25   are Bill Boyce, Dan Young, Laura Mullendore, and Alyson

1    Wooten.

2                   THE COURT:  Thank you.

3                   MR. MOORE:  Good morning, Your Honor.  David

4    Moore from Potter Anderson on behalf of Apple and AT&T.

5    With me from Gibson Dunn are Josh Krevitt, Mark Lyon, Stuart

6    Rosenberg, and Alison Watkins.

7                   THE COURT:  Okay.

8                   MR. POFF:  Good morning, Your Honor.  Adam Poff

9    from Young Conaway on behalf of Samsung.  With me on the

10   line is Christine Haskett from Covington & Burling.

11                  THE COURT:  Okay.

12                  MR. COTTRELL:  Your Honor, Fred Cottrell,

13   Delaware counsel for Huawei.  My co-counsel from Baker

14   Botts, Elliot Williams.

15                  THE COURT:  Okay.

16                  MR. STUHLMAN:  Good morning, Your Honor.

17   Greg Stuhlman from Greenberg Traurig here in Wilmington.

18   With me on the line from my firm's Chicago office is Herbert

19   Finn.

20                  THE COURT:  Okay.

21                  MS. LESTER:  Good morning, Your Honor.  This is

22   Kate Lester calling from Richards Layton & Finger.  I'm on

23   on behalf of Dell with Cathleen Garrigan from Farella Braun

24   & Martel.

25                  THE COURT:  Okay.

1          MR. SHAW:  Good morning, Your Honor.  John Shaw

2     from Shaw Keller for HTC.

3          THE COURT:  Okay.  Anybody else?

4          All right.  For the record, and I do have my

5     court reporter here, it's our case of SoftView LLC versus

6     Apple Inc. the et al, Civil Action No. 10-389-LPS.  And

7     first I apologize for keeping you waiting so long.  I'm in a

8     trial and so I'm trying to squeeze you all into a lengthy

9     break in the trial.  Perhaps not lengthy enough to cover all

10    your issues but we're going to do our best.

11         We do have a lot of discovery issues here in

12    front of us.  I want to try to move through them quickly.

13         Let's first talk about SoftView's request to

14    compel production of certain expert reports and depositions

15    from the *Samsung v Apple* litigation.  And let me hear first

16    from SoftView on this, please.

17         MR. FERGUSON:  Your Honor, this is Andy Ferguson

18    from Irell Manella speaking.

19         THE COURT:  Okay.

20         MR. FERGUSON:  SoftView has requested a very

21    small number of highly relevant documents from Apple and

22    Samsung.  These documents are highly relevant because both

23    Apple and Samsung are parties in this case and because

24    Apple's '163 patent, the double touch to zoom patent

25    teaches functionality that is readily comparable to the

1    functionality taught by these patents.  Neither of these are

2    factors are present in any of the case law cited by Apple

3    and Samsung in their briefs.  Nor do any of those cases

4    involve a request as limited as SoftView's request is in

5    this case.

6              THE COURT:  Let me ask you a few questions.

7    Does the relevance of these materials turn in any way on the

8    claim construction disputes?

9              MR. FERGUSON:  No.

10             THE COURT:  Okay.  In your letter, you seem to

11   assume that there were no real burdens to Apple or Samsung

12   from the production of these documents but the defendants in

13   their letter seem to identify quite a number of burdens.

14   What is your response to that?

15             MR. FERGUSON:  Two points on that, Your Honor.

16             First, the defendants never identified any third

17   party confidentiality concerns when we were meeting and

18   conferring on this point.

19             Second, a number of the documents that we've

20   requested should not have any third party confidentiality

21   concerns because both Apple and Samsung are parties are in

22   this case that.  That covers both the inventor deposition

23   transcripts and the technical expert reports and deposition

24   transcripts for those experts.

25             SoftView has tried to minimize the burden by

1    reducing the number of documents that we've sought to very

2    highly relevant documents, but we couldn't address a burden

3    that defendants didn't raise during the meet and confer

4    process.

5                THE COURT:  All right.  Are you seeking these

6    materials just from Samsung or from both Samsung and Apple?

7                MR. FERGUSON:  Both Samsung and Apple.  Both

8    parties analyze the contact zooming functionality, which is

9    also present in this case.  And both parties will have made

10   admissions that are relevant in this case.  So we would like

11   to have the evidence from both parties.

12               THE COURT:  And at least one of the defendants

13   suggests that I might be getting into a possible minitrial,

14   maybe even redoing parts of the *Apple v Samsung* trial if I

15   go ahead and grant this request.  Respond to that.

16               MR. FERGUSON:  That argument misses the mark,

17   Your Honor.  As to the discovery procedure, we don't

18   determine whether the evidence will be admissible later on.

19   Evidence just needs to be reasonably calculated to lead to

20   the discovery of admissible evidence.  Apple is effectively

21   trying to argue a motion in limine at the discovery stage

22   which is improper.

23               THE COURT:  All right.  Thank you.  Let me hear

24   from Apple or Samsung on this.

25               MS. HASKETT:  Your Honor, this is Christine

1    Haskett for Samsung.

2              Your Honor, SoftView hasn't explained why these

3    materials are relevant to any of the issues in this case.

4    They say the technology is similar but they don't explain

5    how they intend to use any of these materials to prove any

6    issue in this case relating to infringement, validity or

7    damages.

8              These materials relate to a patent, a different

9    patent owned by different parties.  It involves very different

10   claim language.  The claims in the '163 Apple patent have

11   nothing to do with scaling HTML content, and even the language

12   that SoftView quotes in their brief shows that the patents are

13   very different.  The '163 focuses on centering something on a

14   screen which is not present in the patents at issue in this

15   case.

16             Furthermore, the materials that SoftView is

17   seeking, it's actually a very broad request.  Notwithstanding

18   their argument it covers all kinds of materials that have

19   nothing to do even with the '163 patent.

20             There were many, many patents at issue in the

21   *Apple v Samsung* case, including utility patents, design

22   patents, trademarks, trade drafts and all of the expert

23   reports and expert depositions involve multiple patents.

24   And the issues are all wrapped up together, particularly

25   in the case of the damages report.

1           The damages report involved multiple different

2      patents and many, many different damages theories that are

3      completely irrelevant to this case, involve things that

4      have nothing to do with a reasonable royalty or with the

5      technology at issue in this case.

6           THE COURT:  How --

7           MS. HASKETT:  So our position is -- I'm sorry.

8           THE COURT:  Yes.  How difficult would it be to

9      redact and to segregate out the stuff simply relating to the

10     '163 patent?  Would it differ for the technical materials

11     versus the damages materials?

12          MS. HASKETT:  I think the short answer to that

13     is, yes, it would differ.

14          With respect to the technical materials, to be

15     frank, I think it probably could be done.  The technical

16     materials are segregated by patent.  There are other patents

17     involved in his report but there are sections that do relate

18     to the '163 patent.

19          With the damages report, frankly I think it's

20     basically impossible.  The damages analysis in the *Apple v*

21     *Samsung* case obviously were wide ranging and would involve

22     many, many issues.  It's all wrapped up together basically.

23          THE COURT:  Focusing then on the technical

24     materials, what confidentiality burden, if any, is there

25     with respect to those?

```
 1              MS. HASKETT:  Well, obviously with respect to
 2   the technical materials, I represent Samsung and there
 3   is lots of Apple confidential information in there and
 4   vice-versa.  I'm not immediately aware of third-party
 5   confidential information in just the technical materials.
 6   And I would defer to Apple's counsel if they're aware of
 7   something that I'm not.  But the third-party confidentiality
 8   concerns I believe are primarily on the damages material.
 9              THE COURT:  Okay.  Thank you.  Did Apple want to
10   speak on this?
11              MR. LYON:  Thank you, Your Honor.  Mark Lyon for
12   Apple.  Just a couple of points.  I agree with everything
13   Ms. Haskett says on behalf of Samsung.  I guess two things.
14              On the burden, I think that is something that
15   it really does focus mostly on the damages as we've been
16   talking.  They're very highly tied in with third-party
17   confidentiality.
18              I agree with Ms. Haskins that it would be
19   very difficult for us to try to segregate out some of that
20   third-party information from the damages portion because
21   the theories get melted in.  There is a sort of a tallying
22   up by product, and various products are accused of not
23   only infringement of maybe the '163 patent but many other
24   patents and trade dress rights and other things.  It's very
25   difficult for us to segregate that kind of information out
```

1    without getting permission both from the Court and from

2    third parties to be able to produce that.

3              On the technical side, I'm not aware of any

4    third-party confidentiality information, but I think it

5    really goes back to this minitrial point that you alluded

6    to.  A lot of this is looking at the relevance of these

7    documents and weighing the burden and sort of the downstream

8    effects.  That I think it is a balancing test the Court is

9    asked to do here.

10             If you look at what the only possible relevance

11   that SoftView seems to be putting forward here, it is that

12   they want to be able to show that this patent and the

13   invention of this patent is important to Apple.  Therefore,

14   their invention, SoftView's invention is also important to

15   Apple.  So it is comparing patents to patents as opposed

16   to products to the SoftView patent and various other -- or

17   analyzing Apple or SoftView's product by looking at the

18   source code and the various aspects of those products and

19   comparing it for infringement purposes.

20             That's essentially asking us now to try to

21   explain why what is patented in the '163 is a different

22   invention and is a different approach than what we've done

23   here, and so we get into this sort of minitrial within a

24   trial of whether or not the '163 is really the same as the

25   SoftView patent, and whether we really have the same kinds

1   of issues, because Apple has something their experts want

2   to cite, and then we have this fight down the road.

3              It just seems to us this is far afield what they

4   need to be doing.  They need to be focusing on the product

5   and on the actual documents themselves that we've produced,

6   not sort of trying to do a bootstrap argument through a

7   different case, different patents, different inventors,

8   different circumstances.

9              THE COURT:  All right.  Thank you.  We'll give

10  the plaintiff a chance to briefly reply.  Start, if you

11  would, on articulating how it is you would use this material

12  to prove any issue in this case, if you were permitted to

13  do so.

14             MR. FERGUSON:  We would use this evidence for

15  two reasons.  First, it would be used to prove particular

16  issues in this case.  As we noted in our brief, for example,

17  the publicly available version of the expert report from

18  Apple admits that the Apple devices practice contact

19  zooming.  The contact zooming that is covered in that expert

20  report is readily comparable to the contact zooming that is

21  covered by SoftView's patents and so that admission will

22  likely be relevant in this case.

23             In addition to those, that type of admission,

24  this evidence is relevant here because it will lead to the

25  discovery of admissible evidence.  For example, Apple's

1   expert report again analyzed the Samsung source code that

2   performed contact zooming, and that analysis is relevant

3   here and can lead to the discovery of admissible evidence.

4            Similarly, as actually noted by Apple's counsel,

5   the damages expert report will likely contain evidence of

6   the value of contact zooming functionality to Apple and

7   Samsung's positions on that issue --

8            THE COURT:  All right.

9            MR. FERGUSON:  -- which will be -- go ahead.

10            MR. LYON:  Your Honor, may I briefly respond?

11            THE COURT:  No, thank you.  So with respect to

12   this first request, I'm going to grant it in part.  I'm

13   granting it only to the limited extent that SoftView will be

14   provided with the technical materials that it has identified

15   in its letter and only those portions that relate to the

16   '163 patent.

17            I think that these materials do at least have

18   arguable relevance and are at least discoverable at this

19   point.  I understand that the burden of producing these

20   technical materials is not that enormous.  The technical

21   reports and depositions are evidently relatively manageably

22   segregable to comply with the limited nature of the relief

23   that I'm ordering.  There are few, if any, as I understand

24   it, confidentiality and third-party issues given that

25   Samsung and Apple are both parties here in our case.

1          I'm certainly not deciding at this time anything

2    about admissibility, and I don't intend to have a minitrial

3    or a retrial of the *Apple v Samsung* case but I don't need to

4    make decisions as to admissibility or motions in limine

5    today.

6          In all other respects, the plaintiff's request

7    is denied.  To the extent that there is relevance to the

8    damages information that is sought, that relevance is

9    greatly outweighed by what I understand to be the burden of

10   producing those materials.

11         Let's move on now.  I next have Apple's request

12   that SoftView be ordered to revisit its privilege log claims

13   and produce a more descriptive privilege log.  Let me first

14   hear from Apple on that one.

15         MR. LYON:  Thank you, Your Honor.  I can

16   short-circuit this very quickly.

17         We met and conferred with SoftView.  I think

18   we have an agreement at this point, so we can withdraw the

19   motion but we would like to do so without prejudice to us

20   perhaps renewing it if, for some reason, the agreement

21   breaks down in the future.  But we believe that we resolved

22   we resolved the issues at this point and withdraw the

23   motion.

24         THE COURT:  And that's Mr. Lyon on behalf of

25   Apple?

1          MR. LYON:  Yes, sir.

2          THE COURT:  Thank you.  SoftView, are you in

3     agreement with all of that.

4          MS. IGLESIAS:  Your Honor, this is Elizabeth

5     Iglesias for SoftView.

6          We are in agreement with that.

7          THE COURT:  Fine.  Then that one is withdrawn

8     and it's without prejudice to renewal if circumstances arise

9     in which that is necessary.

10         Next is SoftView's request for reopening

11    depositions of Scott and Teksler.  Who is going to address

12    that for SoftView?

13         MR. McGILL:  Your Honor, this is Patrick McGill

14    for Irell & Manella.  I'll be addressing the issue.

15         THE COURT:  Okay.

16         MR. McGILL:  Your Honor, at the deposition of

17    Apple witnesses Everett Scott and Boris Teksler, Apple

18    asserted the common interest privilege on negotiations

19    between itself and RPX.

20         RPX is not a law firm and there is no evidence

21    that RPX ever provided Apple's legal advice.  Instead, RPX

22    is a defense patent aggregation service that tracks clients

23    by offering them a license to its patent portfolio.

24         In 2009, Apple entered into an arm's length

25    negotiation with RPX over a potential monetary contribution

 1    from Apple toward RPX's offer to purchase the SoftView

 2    patents in suit.

 3            THE COURT:  Mr. McGill, let me stop you there.

 4            You say that with respect to the Scott

 5    deposition that we left that issue unresolved but it seems

 6    to me that the February 22nd order ruled against your

 7    request to reopen the Scott deposition.  Am I wrong about

 8    that?

 9            MR. McGILL:  The February 22nd order did deny

10    the request to reopen the Scott deposition.  However, we

11    believe the issue wasn't ripe at that time.  It seems that

12    the Court -- and the Court knows what it ordered, but it

13    seems that the Court denied the request to reopen the Scott

14    deposition on the basis that SoftView could inquire into

15    additional details of Mr. Teksler, which SoftView did at Mr.

16    Teksler's deposition and learned that Apple was claiming a

17    broad-based common interest privilege over communications,

18    developed some additional evidence about the relationship

19    between Apple and RPX, and now we believe that the issue is

20    ripe for this Court's determination on the substance of the

21    issue.

22            THE COURT:  Now, if our ruling was not due to

23    lack of ripeness but was on the merits, then I take it you

24    would agree this is an untimely request for reargument with

25    respect to Mr. Scott?

```
 1              MR. McGILL:  With respect to Mr. Scott, then
 2    we would agree if the Court ruled on the merits on that
 3    issue.
 4              THE COURT:  And so if that is where we are, what
 5    about Mr. Teksler?  Shouldn't the same result follow for
 6    him?
 7              MR. McGILL:  We don't believe the same result
 8    should follow.  Mr. Teksler gave us a great deal of
 9    additional information about the relationship between
10    Apple and RPX.  That is, as you may be able to discern from
11    our letter, that is the foundation.  His testimony is the
12    foundation for our understanding of that relationship and
13    our motion to find that there is no common interest between
14    Apple and RPX with regard to these negotiations.
15              THE COURT:  Now, what about the argument there
16    is a common interest between Apple and the other members of
17    RPX?
18              MR. McGILL:  Your Honor, we believe that, just
19    looking at the facts, you can put aside that argument.  In
20    fact, Apple, during its negotiation, broke them off due to
21    its interest in purchasing the patents directly from
22    SoftView so it could assert those patents against other RPX
23    members, including Samsung.  So we believe that that on its
24    face shows that its interests were not in line with its
25    fellow RPX members.
```

1          THE COURT:  All right.  Alternatively, if I

2    need to reach the issue on the merits of the common interest

3    privilege at least with Mr. Teksler, do you oppose the

4    request that there be full briefing and that RPX be given a

5    chance to be heard on this?

6          MR. McGILL:  Well, Your Honor, we believe that

7    the issue has received a good deal of briefing in our letter

8    briefs, but we do not oppose the additional briefing, if the

9    Court deems that necessary.

10          THE COURT:  All right.  Thank you.  Who is going

11    to address this for defendants?

12          MR. LYON:  Mark Lyon again for Apple, Your

13    Honor.

14          THE COURT:  Okay.

15          MR. LYON:  So first I would say we have disagree

16    with SoftView whether it's on the merits or not.  We believe

17    your earlier ruling on Mr. Scott's testimony was on the

18    merits and there was nothing in your order to indicate it

19    was not.  We believe that the issues are basically identical.

20          If you look at the testimony that has been cited

21    from Mr. Teksler and you look at the testimony that SoftView

22    included from Mr. Scott, Pages 82 to 84, they're asking

23    basically the same types of questions:  Was RPX a law firm?

24    Those kinds of questions that we heard today about whether

25    or not their law firm is providing legal advice.

1          There is nothing really new about the RPX/Apple

2     relationship that came out of the Teksler deposition that

3     wasn't already available to them in the Scott deposition.

4          In fact, though, there is a common interest

5     here in the sense what RPX is, as everybody knows, I think

6     it is fairly well known organization as a patent aggregator

7     and  it has patent members all who are trying to avoid

8     patent litigation by collectively purchasing patents and

9     getting them out of the system so that they're all licensed

10    and there is no threat of litigation from these patents.

11    That is Apple's interest in the RPX.  That is the other

12    members interest in RPX.

13         These discussions which had occurred at a time

14    that was prior to when Apple did actually make this offer

15    that Mr. McGill referred to, to SoftView directly, these

16    were all prior to that time.  These discussions were in

17    point where RPX and Apple were in the midst of discussing

18    what to do about the patent.  And it was between lawyers,

19    between the companies.  It's all of the indications that you

20    have of contributing privileged information between the two

21    companies.

22         So the common interest really does apply here.

23    There is a single unified interest that occurs between

24    these two, and that is avoiding the litigation that might

25    ensue with this particular patent.  There has been nothing

1    at this point that would serve to prove that that is not

2    something that this Court should endorse.  And I think we

3    cited the *Xerox* case, which we believe is very close to

4    what this is, as opposed to some of the other cases such as

5    *Leader* or *Corning* or some of the other cases that SoftView

6    cites where it's much more of an ongoing transaction and

7    purchasing back and forth.

8            I think the other issue that I would like to

9    point out on the briefing, you mentioned that earlier, is

10   that we do believe this is something that is of significant

11   interest to not necessarily staff, although potentially

12   other codefendants who may be RPX members but also RPX

13   itself, and that if the Court is inclined to provide some

14   sort of waiver or finding that there isn't a common interest

15   privilege here, we would ask for additional briefing to

16   occur because in the 24 hour turnaround cycle here where

17   there are new issues raised in the briefing that hasn't been

18   something we dealt with before, we don't think this has had

19   enough of a full briefing.  So we would ask the opportunity

20   to put in declarations and some other things to establish

21   the record and have a little bit better discussion, if the

22   Court is inclined.

23           THE COURT:  Okay.  Thank you.  Mr. McGill,

24   briefly if you want to respond.

25           MR. McGILL:  Yes, Your Honor.  With regard to

1    Apple and RPX, Mr. Lyon made the assertion there was the

2    common interest.  And our response to that is these

3    communications relate to a time period in which there were

4    arm's length negotiations between RPX and Apple.  There is

5    ultimately no deal between those two entities to mutually

6    purchase the SoftView patents because there were a different

7    interest at stake in those communications.  And that is

8    borne out by the fact that Apple abandoned the negotiations

9    to attempt to purchase the patent themselves.  So it shows

10   you that particular circumstance, there were no common

11   interest between Apple and RPX.

12         Additionally, RPX does not have to avoid any

13   litigation versus SoftView.  That's an interest that is

14   relative to Apple alone.  Additionally, there is no common

15   interest between Apple and any of its RPX customers.  They

16   all have different interests with regard to the SoftView

17   patents.  And that again is borne out by the fact Apple

18   attempted to purchase the patents because it believed that

19   other RPX customers infringed them while it did not.  So

20   even if you face the litigation with SoftView, there are

21   different interests that are at stake.

22         Finally, with regard to Mr. Lyon's reference to

23   the *Xerox* case, SoftView believes the *Xerox* case is a far

24   different, the relationship at issue in that case is far

25   different than the one here.  In the *Xerox* case, the two

1    entities had contingency relationships where any litigation,

2    any fruits of that litigation would be shared among them,

3    the lines of interest, quite directly.

4            We believe a better parallel is the *Leader Tech*

5    case which Your Honor also decided.  In that case, they

6    were of different interests and negotiations towards the

7    potential investment, which is what we have in this case

8    here.  So we believe *Leader Tech* case is a better parallel

9    that Your Honor should take as instructive as opposed to the

10   *Xerox* case.

11           THE COURT:  All right.  Thank you.  With

12   respect to this request from SoftView, I'm denying this

13   request.

14           Relating to Mr. Scott, we did intend our

15   February 22nd order to be a decision on the merits with

16   respect to the request to reopen the deposition of Mr. Scott.

17   Now, granted, you all had put a great deal at issue in

18   connection with that order so I can understand there may be

19   some lack of clarity, but that was a ruling on the merits,

20   and there is no basis to reconsider it now.

21           Nor, today, have I been persuaded that there is

22   a basis to rule differently with respect to the request to

23   reopen the Teksler deposition.  So we're not going to

24   revisit that issue in the context of Mr. Teksler either and,

25   therefore, the request for relief is denied.

1          Next on my list is SoftView's requests for

2    production of ATTM data plans subscriptions and usage data.

3    So let me hear from SoftView on that.

4          MR. DAVIDSON:  Your Honor, this is Zach Davidson

5    from Irell & Manella on behalf of this issue.

6          THE COURT:  Okay.

7          MR. DAVIDSON:  The sales of data plan

8    information that SoftView is requesting is highly relevant

9    and directly related to the accused functionalities at issue

10   in SoftView's patents.  These are sales that would have been

11   accounted for in a hypothetical negotiation with either

12   class of defendants, either AT&T or with the manufacturer

13   defendants.

14         SoftView's claimed invention opens up the web to

15   these type of devices at issue in this case, and they create

16   the demand both for the accused products and as well as for

17   the data plan subscriptions themselves.  The inventions that

18   were clear in fact of promoting data plans sales, SoftView

19   needs the requested information to measure out that, and

20   they're relevant against the manufacturer defendants for the

21   same reason they are relevant against AT&T.

22         During a hypothetical negotiation with the

23   manufacturer, SoftView would have taken into account in

24   negotiating a royalty rate the likelihood that the

25   manufacturer would be able to extract a higher price from

1    the carrier by virtue of the demand that the invention

2    creates for the carrier's data plan subscription.  This

3    is especially true against any defendant who may have a

4    revenue sharing with AT&T such that they directly share in

5    the revenues, the result from the sales of the data plan.

6            There is no reason that SoftView couldn't have

7    structured its hypothetical negotiation jointly with AT&T

8    and with a manufacturer defendant like Apple or either class

9    of defendants separately.

10           When the patent first issued in 2008, both

11   class of defendants were infringing.  Both AT&T and the

12   manufacturer defendants benefit from these sales, and AT&T

13   is essentially trying to tell SoftView what its theory of

14   damages needs to be.

15           There are a number of ways SoftView could have

16   structured the hypothetical negotiation, but the point is

17   we're at the discovery stage right now and AT&T is trying to

18   lead us into a discussion over the merits that is better

19   suited for expert discovery.

20           THE COURT:  All right.  Let me stop you there.

21   Are you seeking double damages recovery?

22           MR. DAVIDSON:  We're not seeking double damages

23   recovery, Your Honor.  We can seek damages from AT&T or from

24   the manufacturer defendants.

25           THE COURT:  But when it comes time to actually

1    recover damages, if there are any, you are not seeking to

2    recover the same damages twice?

3            MR. DAVIDSON:  No, Your Honor.  We're seeking to

4    take into account convoyed sales on the royalty rate and the

5    hypothetical negotiation that SoftView could have engaged in

6    with AT&T or with a manufacturer defendant.

7            THE COURT:  Is it your contention that the data

8    plan subscription and the usage data are both relevant to

9    damages?

10           MR. DAVIDSON:  Yes, Your Honor.  The usage

11   data shows that the claimed functionality which creates the

12   demand for the browsers, by showing that the web browsers

13   use data more often than other applications that use data,

14   it shows that SoftView's invention creates demand not only

15   for the accused products but also for the data plan

16   subscriptions.

17           THE COURT:  And there is a suggestion that

18   you're asking for some relief from me that isn't something

19   that you asked for through a proper discovery request in a

20   timely manner.  What is your response to that?

21           MR. DAVIDSON:  I believe that it's with respect

22   to the usage data.  We believe that the request we served

23   requesting documents relating to the retrieval of web pages

24   on AT&T's network should include reports on the amount of

25   data used for that purpose.  AT&T did produce some such

1    information.  They then revealed to us during meet and

2    confer that they had not produced all of that information,

3    and they represented that their basis for limiting the

4    30(b)(6) testimony on this subject was that they didn't

5    regularly track this information.  They since retracted that

6    representation.  We know they keep this information and we

7    believe SoftView's request was broad enough to request that

8    information.

9              THE COURT:  All right.  Let me hear from the

10   defendant.

11             MR. YOUNG:  Your Honor, this is Dan Young from

12   Kilpatrick Townsend.  I'll be handling the data plan issue,

13   and I believe counsel either Mark Lyon or Josh Krevitt will

14   be discussing the data usage plan.

15             With respect to the data plan information, I

16   think the facts of this case show that SoftView understands

17   that this is not relevant.  This is a case involving the

18   manufacturers of smartphones and the specific functionality

19   related to those phones.  For example, the accused

20   functionality and the infringement contentions that SoftView

21   has served against AT&T, all they do is they cite to the

22   manufacturers.

23             The only accused activity that AT&T is cited

24   for infringement is the reselling of these phones.  AT&T is

25   the only reseller in this case.  The manufacturers have

1    relationships with numerous resellers:  Verizon, T-Mobile,

2    Sprint, Cricket.  They have not added, SoftView has not

3    added any of the resellers to this case, nor have they

4    sought any kind of third-party discovery from them.  So as a

5    result, you have over 350 accused products in this case, all

6    phones that are manufactured by these various manufacturer

7    defendants, and only 59 of them AT&T is accused of infringing.

8         For example, Samsung had 94 accused products

9    in this case.  Only 19 of them AT&T resells.  HTC has 58

10   accused products, only nine of them AT&T resells.  So

11   even if SoftView were to prevail on this discovery issue,

12   which they should not, they're not going to have data plan

13   revenue for the vast majority of accused products in this

14   case.

15        They made a decision to pursue damages from the

16   manufacturers, and they have said they're going to get a

17   full measure of damages from the manufacturers regardless

18   of whether they get the data plan revenue information.

19        In this situation, and SoftView alluded to it

20   in their response to your questions, Your Honor, they have

21   elected to pursue damages against the manufacturers.  And

22   they said they're going to get complete recovery from these

23   manufacturers.  Most of these phones will have nothing to do

24   with the data plan revenue for AT&T.

25        Courts have said in the *Itex* case, and I'm

1    quoting from the *Itex* case, "The entire amount of potential

2    damages will be accounted for in a hypothetical royalty

3    between the plaintiff and the manufacturers, rendering the

4    details of a customer's downstream sales irrelevant."

5              THE COURT:  All right.  Let me interrupt you

6    there.

7              MR. YOUNG:  Yes, Your Honor.

8              THE COURT:  Aren't the data plan sales and

9    subscription sales here central to the business model of

10   AT&T?

11             MR. YOUNG:  Your Honor, they are with respect to

12   AT&T, but that is not the accused sale.  The accused sale is

13   from the manufacturers to their customers.  The data plan

14   relates to the sales from AT&T to its customers, the actual

15   individual users of the phones.

16             THE COURT:  Is there any --

17             MR. YOUNG:  With respect to the -- I'm sorry,

18   Your Honor.

19             THE COURT:  Yes, sorry.  Is there any evidence

20   as to whether the price of the phones is impacted by the

21   requirement to purchase a data plan?

22             MR. YOUNG:  Your Honor, the price that is

23   relevant is the price that AT&T pays to the manufacturers.

24   That price is going to include the amount of money that --

25   or account for the amount of money that AT&T can make for

1    the phones.  The manufacturers all know that the resellers,

2    the phone, the carriers in this case like AT&T, Verizon,

3    T-Mobile and others sell the phones with data plans.  So the

4    price of those carriers pay to the manufacturers includes

5    that information.

6              So to the extent that SoftView says, well, the

7    amount of money that AT&T is going to make off these phones

8    is relevant, that is already included in the price of the

9    phones that AT&T has paid to the manufacturers.  And that

10   information, we've already produced in the case.  They

11   already have that information.

12             What they're trying to do is bootstrap

13   additional revenue downstream revenue and roll it again,

14   double dip.  They already accounted for it once.  And the

15   manufacturers have sold the phone to AT&T.  Now they're

16   going to add it back in again and try to increase the price

17   even more.  And that is improper, as we've said.

18             As the cases, the Supreme Court said in *Quanta*

19   and the Federal Circuit said in *Glenair*, once you have

20   gotten your full compensation from the first sale, and

21   they have chosen to go after the manufacturer sales to the

22   resellers, once you have gotten that, any effect of the

23   downstream price of the products is irrelevant because the

24   plaintiff has already gotten full compensation and that

25   plaintiff's rights in the patents are exhausted after that

1    first sale.

2           THE COURT:  All right.  I have to stop you

3    there.  If somebody wants to talk on usage data, I'll give

4    you a brief chance to do that on the defense side.

5           MR. LYON:  Thank you, Your Honor.  This is Mark

6    Lyon on behalf of AT&T for the usage data.

7           The usage data we're talking about here is not

8    relevant in the sense that it is not talking about how often

9    people use the web or how often they might serve or search

10   to zoom, pan or do the other things that are important to

11   the patent.  What it has to do is just sort of the volume of

12   the data that is used.

13          So what you get here is a situation where if

14   somebody downloads a movie, they may be downloading

15   megabytes of data and it may be one instance as opposed to

16   somebody who is using e-mail or using some other kind of a

17   web page, just a static text page that may be 30-40 times

18   of the same kind of downloading but have the same amount of

19   data.  So it doesn't really give you any caliber to how

20   often this is used and how much of a value this is to the

21   company in that sense.

22          THE COURT:  Is it so unrelated that I could say

23   it is not reasonably calculated to lead to discovery of

24   admissible evidence?

25          MR. LYON:  I believe so, Your Honor.  Because I

```
 1    believe to the extent SoftView tries to use this as some
 2    measure of damages and particularly to try to somehow come
 3    up with a theory that uses this to gauge what percentage
 4    of revenues really apply here, it would be something that
 5    wouldn't be supported.  It would be an unsupportable
 6    proposition because there is just no relationship here to
 7    how this actually impacts how often the devices would be
 8    infringing these patents.
 9              THE COURT:  All right.  I've got to give Mr.
10    Davidson just a brief chance to reply, if he wishes.
11              MR. LYON:  Thank you.
12              MR. DAVIDSON:  Sure.  Your Honor, before this
13    invention -- so the defendant is shortchanging what is
14    claimed in this invention.  We're not just talking about
15    panning and zooming.  We're talking about creating a web
16    experience, including preserving the layout functionality,
17    design, that creates the demands for these data subscriptions.
18              Data before the invention was used far less
19    often than data was used after of the invention, and we
20    think the invention creates the web browsing experience that
21    causes people to use the web browser for these highly data
22    intensive experiences.
23              THE COURT:  All right.  Thank you.  I'm going
24    to grant SoftView's request here relating to the evidence
25    of data plan subscriptions and the usage data.  Let me say
```

1    parenthetically, I did not resolve these disputes previously

2    on the merits.  In February to the extent that they were

3    raised at all, we found that they were not ripe in light of

4    representations that certain materials would be produced

5    thereafter.

6           With respect to, on the merits, the data plan

7    subscription information and the usage data, I think they

8    are within the broad scope of discovery, are reasonably

9    calculated to lead to discovery of admissible evidence.  It

10   may turn out to be that there is an expert or somebody else

11   out there who would find there is sufficient correlation

12   between the usage data and the use of the infringing

13   functionality or accused infringing functionality.

14          And in terms of the data plan subscriptions,

15   there may be a reasonable argument that the hypothetical

16   negotiations would consider this extra data about the data

17   plan subscriptions, and maybe it is not adequately accounted

18   for already in the materials that have already been produced.

19          The point is we're still only at discovery.  The

20   damages theories are left to be developed with the expert's

21   assistance, and I'm going to go ahead and grant the relief

22   requested.

23          That leaves me just with SoftView's request for

24   production of certain agreements between Apple and ATTM.  I

25   think I may only need Apple and AT&T and SoftView on the

1    phone for that.  Is that SoftView's perspective as well?

2                    MR. FERGUSON:  We defer to defendants on that

3    that, Your Honor.

4                    THE COURT:  Who wants to speak to that?

5                    MR. LYON:  This is Mark Lyon, Your Honor.  We

6    would ask the other defendants be asked to drop off the

7    call because this does relate to one of the most highly

8    competitively sensitive agreements Apple has at this point.

9                    THE COURT:  And you would agree to AT&T being

10   on the call, too?

11                   MR. LYON:  Yes, that's fine, Your Honor.

12                   THE COURT:  Okay.  Does anybody object to that?

13                   MS. HASKETT:  Your Honor, this is Christine

14   Haskett for Samsung.

15                   I have no objection as long as this portion of

16   the argument isn't going to relate to AT&T's agreement with

17   Samsung.

18                   THE COURT:  Okay.  On SoftView's behalf, there

19   is no reason we would have to discuss the agreement with

20   Samsung; correct?

21                   MR. FERGUSON:  Well, they are withholding

22   the agreement with Samsung as well, so we believe both

23   agreements should be produced, although only Apple has

24   represented that the agreement is so sensitive that it can

25   only be discussed with AT&T and Apple's counsel present.

 1                    THE COURT:  And remind me.  Do I have in front

 2     of me a dispute as to a request for the Samsung agreement?

 3                    MR. FERGUSON:  Yes, Your Honor.  We would

 4     request unredacted copies of both.

 5                    MS. HASKETT:  Your Honor, may I speak to that

 6     just briefly?

 7                    This is again Christine Haskett for Samsung.

 8                    My understanding there is a dispute before you

 9     between SoftView and AT&T as to that agreement.  However,

10     we, Samsung, also object to the production of that agreement

11     but we were not included in the meet and confer leading

12     up to this.  In fact, we haven't even been served with

13     unredacted copies of the briefing.  So we actually believe

14     that this dispute should not be before the Court at this

15     time at least with respect to Samsung because we have not

16     had an opportunity to be heard.

17                    THE COURT:  Okay.  We'll come back to that in a

18     minute.

19                    First, any of my defendants other than Apple,

20     AT&T and Samsung request the opportunity to stay on the rest

21     of the call?

22                    I'm hearing nothing, so I'm going to take that

23     as no objection.  So let's say good-bye to all of you if you

24     are not Samsung, Apple, AT&T or SoftView.

25                    MR. LU:  Before we say good-bye, this is Sam Lu.

1    We have a point of clarification.  And Andrew Ferguson will

2    raise this issue.

3              MR. FERGUSON:  Your Honor, this is Andrew

4    Ferguson from Irell & Manella.

5              We would like to request clarification on your

6    earlier ruling on the *Apple v Samsung* document.  We would

7    like to make sure that the technical materials you ordered

8    the production of includes the Apple inventor deposition

9    transcript.

10             THE COURT:  To the extent they're talking about

11   the technical aspects of the '163 patent, yes.  But in all

12   other respects, no.  Does that clarify it?

13             MR. FERGUSON:  Thank you.  Yes.

14             THE COURT:  All right.  So we're saying good-bye

15   to the other defendants.

16             MR. WILLIAMS:  Yes.  I'm sorry, Your Honor.

17   Just for clarification.  This is Elliot Williams.

18             We represent Huawei but we have also made an

19   appearance for AT&T, Ltd. as to the allegations against

20   the Huawei.  I just want to make clear this discussion you

21   are going to have now does not relate to Huawei phones;

22   correct?

23             THE COURT:  SoftView, is that correct?

24             MR. FERGUSON:  It is not related to Huawei, Your

25   Honor.

1          MR. WILLIAMS:  Okay.  Then I will drop off.

2   Thank you.

3          THE COURT:  Thank you.

4          (Following portion ordered sealed by the Court,

5   bound separately.  Unsealed portion ends at 10:02 a.m.)

6        I hereby certify the foregoing is a true and accurate
    transcript from my stenographic notes in the proceeding.

7

8                          /s/ Brian P. Gaffigan
                        Official Court Reporter
9                         U.S. District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25